CITY OF OAK PARK v SMITH

(PEOPLE v SMITH)

1. WORDS AND PHRASES—FIGHTING WORDS—INJURY—BREACH OF
   PEACE.

   "Fighting words" are words which by their very utterance inflict
   injury or tend to incite an immediate breach of the peace.

2. CONSTITUTIONAL LAW—MUNICIPAL CORPORATIONS—SCOPE OF ORDI-
   NANCE—FIGHTING WORDS—BREACH OF PEACE—ORDINANCES.

   A city ordinance making it "unlawful for any person to insult,
   accost, molest, or otherwise annoy, either by word of mouth,
   sign, or motion, any person in any public place", is constitu-
   tional where the scope of the ordinance is limited to fighting
   words which by their very utterance inflict injury or tend to
   incite an immediate breach of the peace (Oak Park Code of
   Ordinances, § 30-62.).

3. OBSCENITY—OFFENDING GESTURES—THE FINGER—BREACH OF PEACE
   —SPONTANEOUS REACTIONS—INSULT.

   Making an offending gesture commonly known as "the finger"
   was not conduct by a defendant which under the circumstances
   in which it was made would lead to a breach of the peace
   where the gesture was made as a spontaneous reaction to a
   sudden emergency and was not a deliberate attempt to provoke
   a breach of the peace, where the police officer to whom the
   gesture was made was insulted but not aggravated to fight by
   it, and where the gesture was not intended as an insult to the
   police since the defendant was unaware that the person to
   whom he made the gesture was a police officer.

REFERENCES FOR POINTS IN HEADNOTES

[1, 2, 4] 12 Am Jur 2d, Breach of Peace and Disorderly Conduct §§ 10,
   11.
   Supreme Court's view as to the protection or lack of protection,
   under the federal constitution of the utterance of "fighting
   words." 39 L Ed 2d 925.
[2] 12 Am Jur 2d, Breach of Peace and Disorderly Conduct § 2.
[3] 12 Am Jur 2d, Breach of Peace and Disorderly Conduct §§ 8–12.

4. Words and Phrases—Fighting Words—Police Officers—Restraint.

Words may or may not be "fighting words", depending upon the circumstances of their utterance; a properly trained police officer may reasonably be expected to exercise a higher degree of restraint than the average citizen, and thus be less likely to respond belligerently to "fighting words".

Appeal from Oakland, Farrell E. Roberts, J. Submitted October 13, 1977, at Lansing. (Docket No. 77-1379.) Decided November 22, 1977.

Edward W. Smith was convicted in district court of improper lane usage and of making an unlawful gesture in a public place in violation of the Code of Ordinances for the City of Oak Park. Defendant appealed to circuit court. Affirmed. Defendant's delayed application for leave to appeal to the Court of Appeals was denied. Defendant sought leave to appeal in the Supreme Court which in lieu of grant of leave to appeal remanded to the Court of Appeals as on leave granted, 399 Mich 869 (1977). Reversed.

*Shifman & Goodman, P. C.* (by *David M. Black*), for plaintiff.

*Carl R. Meyer* and *Sheridan V. Holzman,* for the American Civil Liberties Union, for defendant.

Before: Danhof, C. J., and Allen and H. L. Heading,* JJ.

Per Curiam. Defendant was charged in Count I with improper lane usage and, in Count II, with making an unlawful gesture in a public place in violation of § 30-62 of the Code of Ordinances for the City of Oak Park. At trial without a jury in

---

* Detroit Recorder's Court judge, sitting on the Court of Appeals by assignment.

the district court he represented himself *in propria persona* and was found guilty on both counts. He was fined $30 plus $4 costs on Count I and given a suspended sentence on Count II. An appeal on Count II was taken to the circuit court which, on December 18, 1975, issued an opinion sustaining the validity of the ordinance and affirming the conviction. A delayed application for leave to appeal was denied by this Court on July 14, 1976, but, on March 24, 1977, the cause was remanded by the Michigan Supreme Court with instructions that it be considered by this Court.

The alleged making of an unlawful gesture occurred July 25, 1975, when defendant was driving west on 9-Mile Road approaching its intersection with Coolidge, with the intention of making a left-hand turn into a filling station located on the southeast corner of the intersection. In making the left turn, defendant crossed a solid yellow line, nearly striking the left rear door of a vehicle ahead which was properly shifting lanes, preparing to turn left on Coolidge. The vehicle ahead was an unmarked police car driven by a police officer in civilian clothes. The officer testified that as he braked to avoid a collision he looked over his left shoulder and saw defendant give "what is commonly known as the finger,[1] by extending his index finger upward, and his lips were observed to move in what he believed to be an obscene utterance". The officer also testified that he was "insulted" by the gesture. Defendant testified that at the moment the car ahead slammed on its brakes the driver turned around and mouthed "something in a very rude manner" to which defendant "re-

[1] The extended middle finger or *digitus impudicus* is a phallic symbol. Its use as a semiotic insult is of ancient origin. Diogenes is reported to have insulted Demosthenes with it. Bauml and Bauml, Dictionary of Gestures, Scarecrow Press (1975), p. 71.

sponded spontaneously with the alleged obscene gesture".[2] Neither driver articulated what the respective obscene or rude lip movements appeared to be.

The city ordinance which is the sole issue in this appeal reads:

"It shall be unlawful for any person to *insult,* accost, molest, or otherwise *annoy,* either by word of mouth, sign, or motion, any person in any public place." (Emphasis supplied.) Oak Park Code of Ordinances, § 30-62.

Defendant claims that the ordinance is unconstitutional by reason of vagueness and overbreadth. The circuit judge sustained the constitutionality of the ordinance by limiting the scope of the ordinance to that of "fighting words" as defined in *Chaplinsky v New Hampshire,* 315 US 568, 572; 62 S Ct 766, 769; 86 L Ed 1031, 1035 (1942). That case defined "fighting words" as words "which by their very utterance inflict injury or tend to incite an immediate breach of the peace".

But for the "fighting words" construction given it by the respected circuit judge, the ordinance in question would be unconstitutional by reason of overbreadth and vagueness.[3] This conclusion is dictated by *Coates v Cincinnati,* 402 US 611; 91 S Ct 1686; 29 L Ed 2d 214 (1971), and *United Pentecostal Church v 59th District Judge,* 51 Mich App 323; 214 NW2d 866 (1974). In each case, as here, the ordinance in dispute prohibited conduct which,

---

[2] "At that point I saw this car pull in front of me, slam on his brakes, turn around and mouth something at me. Whether he was swearing at me, whether he was just saying good day, I don't know. He mouthed something to me in a very rude manner, to which I responded spontaneously with the alleged obscene gesture. This was my reaction to anybody who swears at me and it's a reaction that come completely spontaneous."

[3] The distinction between vagueness and overbreadth is discussed in *People v Purifoy,* 34 Mich App 318, 320; 191 NW2d 63 (1971).

*inter alia,* was *annoying* to others.[4] In each case the Court struck down the ordinance because what is annoying to some people is not annoying to others and, as a result, men of common intelligence must guess at its meaning. The identical infirmity appears in the present ordinance and is augmented by the equally vague word "insult". People are insulted by varying forms of expression and, depending upon the circumstances, identical words (or equivalent gestures) can be insulting or annoying depending on the circumstances with and in which they are made.

The *Chaplinsky* construction was recently employed by this Court to sustain a city ordinance which on its face was equally or even more vague than the ordinance in the case before us. *People v Klein,* 67 Mich App 556; 242 NW2d 436 (1976).[5] In that case a request by defense counsel for an instruction to the jury that a conviction could not occur unless the jury found that the language used amounted to fighting words, as that term was defined in *Chaplinsky,* had been denied by the trial court. On appeal, our Court reversed, stating that under the interpretation of the trial court defendants could be convicted if the language were only grossly vulgar or profane rather than language which, under the circumstances in which it

---

[4] "It shall be unlawful for three or more persons to assemble, except at a public meeting of citizens, on any of the sidewalks, street corners * * * and there conduct themselves in a manner *annoying* to persons passing by, or occupants of adjacent buildings." *Coates, supra,* at 611. (Emphasis supplied.)

"It shall be unlawful for any person to make * * * any noise which either *annoys,* disturbs, injures or endangers the comfort, repose, health, peace or safety of others, within the limits of the City." *Pentecostal Church, supra* at 325. (Emphasis supplied.)

[5] Pontiac Ordinance No 728, § 2A(20a) prohibited the use of "indecent, profane, or obscene language in the presence of others". The offensive language in dispute was an utterance "God damned mother fucking police".

was used, would incite an immediate breach of the peace. Accordingly, the Court did not strike down the ordinance but reversed the conviction and remanded to the trial court for retrial.

This panel also adopts the *Chaplinsky* construction and sustains the ordinance in dispute. Since the trial judge did use the "fighting words" construction the determinative issue arises of whether the offending gesture was one which, under the circumstances in which it was given, would incite an immediate breach of the peace.

We have carefully reviewed the brief transcript of the district court trial and are satisfied that, though defendant's action was immature and obviously offended the officer's pride, it was not conduct which, under the circumstances in which it was given, would lead to a breach of the peace. Defendant was unaware and had no reason to know that the driver of the other vehicle was a police officer. Obviously, the gesture was not intended to provoke or insult the police. Nor was the gesture deliberately made to provoke a breach of the peace. Instead, it was a spontaneous reaction to a sudden emergency which commonly occurs each day. In such minor stress circumstances, many drivers utter profane words—a normal reaction in the everyday traffic congestion. Indeed, the transcript discloses that the officer, far from being aggravated to fight was only "insulted". Admittedly, the defendant testified that the officer had a "menacing" look and that when the officer approached to give him a ticket he thought there would be a fight. It was this testimony which led the trial court to conclude that the gesture was tantamount to fighting words. However, a close reading of the testimony discloses that the "men-

acing" look came before and in fact provoked the offending gesture. Thus, we must conclude that *under the circumstances of this case,* as a matter of law, the gesture did not amount to fighting words. The situation is distinguishable from *Klein, supra,* where the utterance was so obviously hard core that a jury question was presented.

" * * * *[W]ords may or may not be 'fighting words,'* *depending upon the circumstances of their utterance.* It is unlikely, for example, that the words said to have been used here would have precipitated a physical confrontation between the middle-aged woman who spoke them and the police officer in whose presence they were uttered. The words may well have conveyed anger and frustration without provoking a violent reaction from the officer. Moreover, as noted in my previous concurrence, *a properly trained officer may reasonably be expected to 'exercise a higher degree of restraint'* than the average citizen, and thus be less likely to respond belligerently to 'fighting words' ". (Emphasis supplied.) *Lewis v City of New Orleans,* 415 US 130, 135; 94 S Ct 970, 973; 39 L Ed 2d 214, 220 (1974). Justice Powell, concurring in result.

In sustaining the Oak Park ordinance, this Court does not intend to condone or open the door to the gesture of "the finger" in all future occurrences. Defendant and the public are admonished that in other circumstances and conditions, such conduct is punishable under the ordinance.[6] Given the right circumstances, the law may retaliate, not with its finger but with its long arm.

Reversed.

---

[6] For an excellent analysis of United States Supreme Court decisions involving overbreadth, vagueness and fighting words *see,* Yarbrough, *The Burger Court and Freedom of Expression,* 33 Washington & Lee Law Review 37, 37–58 (1976).