PEOPLE v DeFILLIPPO

1. CONSTITUTIONAL LAW—CITY ORDINANCES—IDENTIFICATION OF PER-
   SON—EVIDENCE OF IDENTIFICATION—VAGUENESS.

   A city ordinance which provides that a police officer with reason-
   able cause to believe an individual's behavior warrants further
   investigation for criminal activity may stop and question such
   person and that the person stopped cannot lawfully refuse to
   identify himself, and that if he is unable to provide reasonable
   evidence of his true identity he may be transported to the
   nearest police precinct to ascertain his identity, is void for
   vagueness because (1) it fails to give a person of ordinary
   intelligence fair notice that his contemplated conduct is forbid-
   den, (2) it seeks to make criminal conduct which is innocent,
   and (3) it undercuts the probable cause standard of the Fourth
   Amendment (Detroit Municipal Code § 39-1-52.3).

2. CONSTITUTIONAL LAW—CITY ORDINANCES—IDENTIFICATION OF PER-
   SON—VAGUENESS.

   An ordinance which allows a police officer to arrest an individual
   for failure to produce identification is void for vagueness if it
   fails to give a person of ordinary intelligence fair notice that
   his contemplated conduct is forbidden, because an innocent
   citizen cannot generally know when a police officer has reason-
   able cause to believe that his behavior warrants further investi-
   gation for criminal activity, and therefore cannot know when
   refusal to identify himself will be a crime (Detroit Municipal
   Code § 39-1-52.3).

3. CONSTITUTIONAL LAW—CITY ORDINANCES—IDENTIFICATION OF PER-
   SON—VAGUENESS.

   An ordinance which allows a police officer to arrest an individual
   for failure to produce identification is void for vagueness if it
   fails to define which of today's numerous forms of identification

REFERENCES FOR POINTS IN HEADNOTES
[1–3] 73 Am Jur 2d, Statutes § 346.
[4] 16 Am Jur 2d, Constitutional Law § 351.
  21 Am Jur 2d, Criminal Law § 349 *et seq.*
[5] 68 Am Jur 2d, Search and Seizure § 92.

will satisfy a police officer's desire for verified documents, because this lack of specificity encourages arbitrary and erratic arrests by delegating to police officers the determination of who must be able to produce what kind of identification (Detroit Municipal Code § 39-1-52.3).

4. CONSTITUTIONAL LAW—CRIMINAL CONDUCT—INNOCENT CONDUCT— PERSONAL LIBERTY—POLICE QUESTIONS—CITIZEN'S RIGHT TO AN- SWER.

No one may be restrained of his liberty unless he has trans- gressed some law, and while police may under certain circum- stances intrude upon a person's privacy by stopping him and asking questions, there can be no requirement that the person answer; although the police have a right to request citizens to answer voluntarily questions concerning unsolved crimes, they have no right to compel them to answer.

5. SEARCHES AND SEIZURES—CONSTITUTIONAL LAW—CITY ORDINANCES —DANGEROUS PERSONS—SEARCHES ON SUSPICION—VOID ORDI- NANCE—UNLAWFUL ARREST.

A police officer may make only a limited search of a person he has stopped on suspicion, and then only if he has reason to believe the person is armed and dangerous; an ordinance which sanctions full searches on suspicion, without regard for danger- ousness of those persons whose activities fall within the vague perimeters of the ordinance is void, and a search incident to arrest for violation of the ordinance is unlawful.

Appeal from Recorder's Court of Detroit, Thomas L. Poindexter, J. Submitted October 17, 1977, at Detroit. (Docket No. 77-20.) Decided De- cember 6, 1977.

Gary DeFillippo was charged with possession of a controlled substance. Defendant moved to sup- press evidence and to quash the information. Mo- tion denied. Defendant appeals by leave granted. Reversed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward R. Wilson,* Re- search, Training and Appeals, and *Timothy A.*

*Baughman,* Assistant Prosecuting Attorney, for the people.

Legal Aid and Defender Association of Detroit (by *Thomas Loeb* and *Thomas E. Binion),* for defendant on appeal.

Before: T. M. BURNS, P. J., and R. B. BURNS and W. R. BROWN,* JJ.

R. B. BURNS, J. Defendant was charged with possession of a controlled substance, phencyclidene. MCLA 335.341(4)(b); MSA 18.1070(41)(4)(b). Prior to trial he moved to suppress evidence obtained in a search of his person and to quash the information. The motion was denied and we granted an interlocutory appeal.

The facts indicate that two Detroit police officers received a radio call to investigate two allegedly drunken persons in an alley. Upon their arrival at the alley, the officers found defendant and a companion. The intoxicated companion was arrested for disorderly conduct. Defendant did not appear intoxicated, but when he was asked for his identification, he replied that he was Sergeant Mash, a Detroit police officer. When asked for his badge number, defendant replied that he was working for Sergeant Mash. Defendant was then arrested for failure to produce identification, handcuffed, and searched. Marijuana was found immediately, and phencyclidene was found later at the station in a pack of defendant's cigarettes.

It is defendant's theory that the Detroit ordinance which allows a police officer to arrest an individual for failure to produce identification is unconstitutional, that the search incident to his

---

* Circuit judge, sitting on the Court of Appeals by assignment.

arrest was therefore unlawful, and that the evidence must be suppressed. It is plaintiff's theory that we should avoid the issue of the constitutionality of the ordinance, because even if the ordinance is unconstitutional, the police officer's good faith reliance thereon would preclude application of the exclusionary rule. The purpose of the exclusionary rule is to deter unlawful police conduct, and "where official action was pursued in complete good faith, the deterrence rationale loses much of its force", *Michigan v Tucker*, 417 US 433, 447; 94 S Ct 2357, 2365; 41 L Ed 2d 182, 194 (1974). See *United States v Carden*, 529 F2d 443 (CA 5, 1976), *United States v Kilgen*, 445 F2d 287 (CA 5, 1971).

We cannot subscribe to plaintiff's theory. If, as defendant argues, the ordinance is void for vagueness, subject to arbitrary and discriminatory application, and used as a pretext for unlawful search and seizure, suppression of evidence obtained pursuant to a search incident to arrest thereon will deter unlawful police conduct, and the exclusionary rule should therefore apply. See *Powell v Stone*, 507 F2d 93, 98 (CA 9, 1974), *rev'd on other grounds*, 428 US 465; 96 S Ct 3037; 49 L Ed 2d 1067 (1976), *United States ex rel. Newsome v Malcolm*, 492 F2d 1166, 1174–1175 (CA 2, 1974), *Hall v United States*, 459 F2d 831, 841–842 (DC Cir, 1972).

At the time of defendant's arrest, Detroit Municipal Code § 39-1-52.3 read as follows:

"When a police officer has reasonable cause to believe that the behavior of an individual warrants further investigation for criminal activity, the officer may stop and question such person. It shall be unlawful for any person stopped pursuant to this section to refuse to identify himself, and to produce verifiable documents or other evidence of such identification. In the event that

such person is unable to provide reasonable evidence of his true identity the police officer may transport him to the nearest precinct in order to ascertain his identity."

The ordinance has been slightly amended since defendant's arrest, but there are no significent changes.[1]

The ordinance is void for vagueness.

First, it "fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden * * * ". *United States v Harriss,* 347 US 612, 617; 74 S Ct 808, 812; 98 L Ed 989, 996 (1954), see *Papachristou v City or Jacksonville,* 405 US 156; 92 S Ct 839; 31 L Ed 2d 110 (1972). An innocent citizen cannot generally know when a police officer has reasonable cause to believe that his behavior warrants further investigation for criminal activity, and therefore cannot know when refusal to identify himself will be a crime. Nor does the ordinance define which of today's numerous forms of identification will satisfy a police officer's desire for verifiable documents. This lack of specificity "encourages arbitrary and erratic arrests", *Papachristou v City of Jacksonville, supra,* by delegating to police officers the determination of who must be able to produce what kind of identification.

Second, the ordinance seeks to make criminal, conduct which is innocent. *Papachristou v City of Jacksonville, supra, Detroit v Sanchez,* 18 Mich App 399, 401–402; 171 NW2d 452, 453 (1969).

"Personal liberty, which is guaranteed to every citizen under our Constitution and laws, consists of the

[1] The amendment, Detroit Ordinance No 158-H (October 19, 1976), makes clear that refusal to identify oneself is a crime. This was implicit in the ordinance as it read at the time of defendant's arrest, since the ordinance authorized arrest for failure to identify oneself.

right of locomotion,—to go where one pleases, and when, and to do that which may lead to one's business or pleasure, only so far restrained as the rights of others may make it necessary for the welfare of all other citizens. One may travel along the public highways or in public places; and while conducting themselves in a decent and orderly manner, disturbing no other, and interfering with the rights of no other citizens, there, they will be protected under the law, not only in their persons, but in their safe conduct. The Constitution and the laws are framed for the public good, and the protection of all citizens, from the highest to the lowest; and no one may be restrained of his liberty, unless he has transgressed some law. Any law which would place the keeping and safe conduct of another in the hands of even a conservator of the peace, unless for some breach of the peace committed in his presence, or upon suspicion of felony, would be most oppressive and unjust, and destroy all the rights which our Constitution guarantees." *Pinkerton v Verberg,* 78 Mich 573, 584; 44 NW 579, 582–583 (1889).

While police may under certain circumstances intrude upon a person's privacy by stopping him and asking questions, *Terry v Ohio,* 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968), there can be no requirement that the person answer. "[W]hile the police have a right to request citizens to answer voluntarily questions concerning unsolved crimes they have no right to compel them to answer." *Davis v Mississippi,* 394 US 721, 727 fn 6; 89 S Ct 1394, 1397 fn 6; 22 L Ed 2d 676, 681 fn 6 (1969). Accord, *Terry v Ohio, supra,* at 34; 88 S Ct at 1886; 20 L Ed 2d at 913 (White, J., concurring).

Third, the ordinance undercuts the probable cause standard of the Fourth Amendment. *Papachristou v City of Jacksonville, supra, People v Berck,* 32 NY2d 567; 300 NE2d 411; 347 NYS2d 33 (1973). A police officer may make only a limited search of a person he has stopped on suspicion,

and then only if he has reason to believe the person is armed and dangerous. *Terry v Ohio, supra.* The Detroit ordinance sanctions full searches on suspicion, without regard for dangerousness, of those persons whose activities fall within the vague parameters of the ordinance.

Since the ordinance is void, the search incident to arrest for violation of the ordinance was unlawful. The evidence should have been suppressed and the information quashed.

Reversed.