PEOPLE v VAN WASSHENOVA

Docket No. 57070. Submitted October 6, 1982, at Detroit.—Decided
    December 6, 1982.

Defendant, Mark D. Van Wasshenova, was charged in Monroe
    Circuit Court with resisting and obstructing a police officer. A
    jury found the defendant guilty as charged and a judgment was
    entered thereto, James J. Kelley, J. A second jury, thereafter,
    convicted defendant under a supplemental information charg-
    ing him as a habitual offender. Defendant appeals from his
    conviction for resisting and obstructing a police officer. On
    appeal, defendant alleges that the actions of the railroad police
    officer involved in this case were outside his authority, that the
    officer was thus acting as a private person and that, therefore,
    the defendant did not interfere with a police officer. Defendant
    also alleges error in the trial court's failure to give a criminal
    jury instruction on intoxication requested by the defendant.
    *Held:*

    1. A railroad police officer is a special police officer who has
    the powers of a regular police officer in his special employ-
    ments. A railroad police officer possesses the powers of sheriffs,
    marshals, constables, and municipal police officers, except in
    the service of civil process, whether or not the power exercised
    relates to his employer's business, as long as the exercise of
    such power arises while the officer is otherwise engaged in the
    discharge of his duties as a police officer for the railroad.

    2. Here, the officer was acting in furtherance of his duties for
    his employer, the Detroit-Toledo Shoreline Railroad, when he
    went to his employer's property to investigate the stoning of
    one of his employer's trains and observed the stoning of a
    Conrail train on Conrail property near his employer's property.
    The officer, as a special police officer, had the authority to order
    the group which he saw stoning the Conrail train away from

REFERENCES FOR POINTS IN HEADNOTES

[1, 3, 4] 14 Am Jur 2d, Carriers § 1212.

    70 Am Jur 2d, Sheriffs, Police, and Constables § 21 *et seq.*

[2] 73 Am Jur 2d, Statutes § 145 *et seq.*

[5] 58 Am Jur 2d, Obstructing Justice § 10 *et seq.*

    75 Am Jur 2d, Trial § 719.

the Conrail tracks to stop and prevent the stoning. It is irrelevant that he was not Conrail's agent for the purpose of ejecting trespassers. The officer was a police officer for the purpose of stopping the stoning of trains and properly exercised his discretion in stopping it in the manner employed. Defendant, therefore, illegally interfered with a police officer and was not entitled to a directed verdict.

3. Any error by the trial court in instructing the jury that the crime of resisting and obstructing a police officer is a specific intent crime was harmless beyond a reasonable doubt. Such crime is a general intent crime.

Affirmed.

1. RAILROADS — RAILROAD POLICE OFFICERS — SPECIAL POLICE OFFICERS.

A railroad police officer is a special police officer who has the powers of a regular police officer in his special employments (MCL 470.51, 470.55; MSA 22.1260[1], 22.1260[5]).

2. STATUTES — CONSTRUCTION.

It is presumed, as a general rule of statutory construction, that all parts of a statute have meaning.

3. RAILROADS — RAILROAD POLICE OFFICERS — POWERS.

A railroad police officer possesses the powers of sheriffs, marshals, constables, and municipal police officers, except in the service of civil process, whether or not the power exercised relates to his employer's business, as long as the exercise of such power arises while the officer is otherwise engaged in the discharge of his duties as a police officer for the railroad.

4. RAILROADS — THROWING STONES — POLICE OFFICERS.

Any police officer may enforce the statute which prohibits throwing stones at a train (MCL 750.394; MSA 28.626).

5. CRIMINAL LAW — RESISTING AND OBSTRUCTING POLICE OFFICERS — GENERAL INTENT — HARMLESS ERROR — COURT RULES.

The crime of resisting and obstructing a police officer is a general intent crime; therefore, a trial court's error in instructing the jury that specific intent is a necessary element of such offense may be found to be harmless beyond a reasonable doubt (MCL 750.479; MSA 28.747; GCR 1963, 529.1).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Michael W. LaBeau,*

Prosecuting Attorney, and *William D. Bond,* Assistant Prosecuting Attorney, for the people.

*Leslie J. Nearpass,* for defendant on appeal.

Before: DANHOF, C.J., and N. J. KAUFMAN and D. C. RILEY, JJ.

N. J. KAUFMAN, J. The defendant, Mark David Van Wasshenova, was charged with and convicted by a jury of resisting and obstructing a police officer, MCL 750.479; MSA 28.747.[1] A second jury convicted the defendant under a supplemental information charging him as a habitual offender, MCL 769.10; MSA 28.1082.[2] He was sentenced to two to three years imprisonment. The defendant appeals his conviction for resisting and obstructing a police officer.

On May 3, 1980, Sergeant Edward Allstead, a police officer for the Detroit-Toledo Shoreline Railroad (DTS), was dispatched to South Rockwood on

---

[1] "Any person who shall knowingly and wilfully obstruct, resist or oppose any sheriff, coroner, township treasurer, constable or other officer or person duly authorized, in serving, or attempting to serve or execute any process, rule or order made or issued by lawful authority, or who shall resist any officer in the execution of any ordinance, by law, or any rule, order or resolution made, issued, or passed by the common council of any city board of trustees, or common council or village council of any incorporated village, or township board of any township or who shall assault, beat or wound any sheriff, coroner, township treasurer, constable or other officer duly authorized, while serving, or attempting to serve or execute any such process, rule or order, or for having served, or attempted to serve or execute the same, *or who shall so obstruct, resist, oppose, assault, beat or wound any of the above named officers, or any other person or persons authorized by law to maintain and preserve the peace, in their lawful acts, attempts and efforts to maintain, preserve and keep the peace, shall be guilty of a misdemeanor,* punishable by imprisonment in the state prison not more than 2 years, or by a fine of not more than 1,000 dollars." (Emphasis added.)

[2] The defendant had been convicted in 1976 of attempted malicious destruction of property over one hundred dollars, a felony. In 1977 he was convicted of malicious destruction of police property, a felony, and resisting and obstructing a police officer, a misdemeanor.

a report that a DTS train had been pelted with stones near the Huron River. In that area, DTS tracks cross the river. About 20-30 yards away, parallel tracks owned by Conrail cross the river on another bridge. Another DTS train was scheduled to pass over the DTS bridge soon. Upon his arrival, Allstead observed a group of people on Conrail property throwing stones at a passing Conrail train. He did not see the defendant throw stones. Allstead told the group to leave. The other members of the group packed up to leave, but the defendant remained, using foul language and asking what authority Allstead had to eject people from Conrail's property.[3]

The defendant struck Allstead on the chest three times. Allstead constantly retreated to avoid an altercation, backing up almost 20 yards. He kept his police dog behind him because he did not feel the incident warranted the use of an attack dog.[4] Allstead called twice for assistance. The Michigan State Police responded. As the State Police approached, the defendant attempted to leave. Allstead grabbed him and the State Police assisted in taking the defendant into custody.

The defendant's three issues on appeal can be condensed into two issues.[5]

---

[3] Allstead was wearing a blue police uniform, including a badge, and had a sidearm, portable radio, and a trained police dog.

[4] At one point the defendant nearly knocked Sgt. Allstead over. Allstead temporarily lost control of his dog, which bit into the defendant's pant leg. The defendant testified that Sgt. Allstead ordered the dog "get him, Rick". Allstead testified that his dog's name was Eric, and that all command words are in German to prevent inadvertent attacks.

[5] The issues, as stated in the defendant's brief, are:

"A. Did the conviction of defendant-appellant for resisting and obstructing an officer in the discharge of his duty constitute error where the officer's actions fell outside his statutory grant of authority?

"B. Did the trial court err reversibly in denying defendant-appellant's motion for directed verdict when officer Allstead's actions were not clearly shown to be within his statutory grant of authority?

I

## THE AUTHORITY OF RAILROAD POLICE

The first issue is whether Sgt. Allstead's actions were outside his authority as a railroad police officer. If they were, then he was acting as a private person, and the defendant did not interfere with a police officer under MCL 750.479; MSA 28.747. See *People v Stark,* 120 Mich App 350; 327 NW2d 474 (1982).

Railroad police are special police officers commissioned by the state. MCL 470.51; MSA 22.1260(1).[6] Their authority under statute is very broad:

"C. Did the trial court's instruction on defendant-appellant's claimed defense of intoxication serve to confuse and mislead the jury rather than enlighten them on that defense and thus deny defendant-appellant's right to have a sufficiently informed jury pass upon the evidence?"

Issues A and B involve the same legal issue, the scope of a railroad police officer's authority, and accordingly will be discussed as one issue.

[6] That statute reads:

"Upon application, in writing, of a company owning, leasing, using, or operating any railroad, railway, or railway express agency in this state, whether by steam, electricity or other motive power, accompanied by the statements of 3 reputable United States citizens testifying to the moral character of the person mentioned in the application, the director of the department of state police may, if he finds the person to be suitable and qualified, appoint and commission the person to act as policeman for the company, upon the premises of the company, or elsewhere within the state, when in the discharge of his duties as policeman for the company. A person shall not be eligible to receive an appointment unless he is 18 years of age or more and has completed a minimum of 200 hours of training, which shall be certified by the Michigan law enforcement training council created by Act No. 203 of the Public Acts of 1965, being sections 28.601 to 28.616 of the Michigan Compiled Laws. Every policeman so appointed shall be known and designated as a railroad policeman. His commission shall be in force until it becomes null and void or terminated as hereinafter provided."

Sgt. Allstead was commissioned under prior law by the Governor and was "grandfathered in" when a 1974 amendment designated that the director of state police commission railroad police officers.

"Every railroad policeman, who is appointed and commissioned as provided in this act, shall have, exercise and possess, throughout the state, while in the discharge of his duties as such policeman, the powers of sheriffs, marshals, constables and municipal police officers, except in the service of civil process; and such policeman shall enforce and compel obedience to the laws of this state and to the ordinances of the cities, villages and towns thereof, when engaged in the discharge of his duties as policeman for such company." MCL 470.55; MSA 22.1260(5).

The scope of authority in the context presented here is a question of first impression in the appellate courts of this state. The defendant argues that a railroad police officer can enforce laws only when engaged in the discharge of duties on the railroad's behalf. Sgt. Allstead is an employee of DTS, not of Conrail, and therefore, the defendant argues, Allstead's actions in ordering the defendant away from the Conrail bridge were not in furtherance of his employer's business. The prosecutor argues that if a railroad police officer acting in the discharge of his duties encounters any criminal activity he has the duty under the statute to act as any public law enforcement officer would, whether it furthers his employer's interests or not.

Railroad police officers are specially trained and certified; with this comes a special public responsibility to assist in law enforcement. They are not private guards whose sole purpose is to protect their employers' property. Instead, the state makes them quasi-public officers—special police officers— and imposes law enforcement duties for the public good. A special police officer has the powers of a regular police officer in his special employments. 1 Alexander, The Law of Arrest, § 50, p 381 (1949).

It would be meaningless to say that a railroad police officer can enforce laws only when a crimi-

nal act is directed against his employer. Every company is privileged to stop a crime being committed against it, and human agents must necessarily be employed to perform this function. As a general rule of statutory construction, it is presumed that all parts of a statute have meaning. *Melia v Employment Security Comm,* 346 Mich 544, 562-563; 78 NW2d 273 (1956). We, therefore, hold that a railroad police officer possesses the powers of sheriffs, marshals, constables, and municipal police officers, except in the service of civil process, whether or not the power exercised relates to his employer's business, as long as the exercise of such power arises while the officer is otherwise engaged in the discharge of his duties as a police officer for the railroad.

There is no doubt that Sgt. Allstead was acting in furtherance of his duties for DTS when he went to the scene. He was there to investigate the stoning of one DTS train and prevent the stoning of another DTS train scheduled to pass by soon. As a special policeman, Sgt. Allstead was acting on behalf of DTS at this time. But upon his arrival he witnessed a Conrail train being stoned. Stoning a train is a crime which any police officer can attempt to stop and prevent. MCL 750.394; MSA 28.626.[7] At this point the more public aspect of Sgt. Allstead's position was invoked. Sgt. Allstead, as a special police officer, had the authority to order the group away from the railroad tracks to stop and prevent a crime. It is irrelevant that he was not Conrail's agent for the purpose of ejecting trespassers. He was a police officer for the purpose of stopping the stoning of trains and properly

---

[7] "Any person who shall throw any stone, brick or other missile at any passenger train, sleeping car, passenger coach, express car, mail car, baggage car, locomotive, caboose, freight train or at any street car, trolley car or motor vehicle, shall be guilty of a misdemeanor."

exercised his discretion in stopping it in the manner employed. The defendant, therefore, illegally interfered with a police officer and was not entitled to a directed verdict.

## II

### INSTRUCTIONS ON INTOXICATION

At the time of the offense, the defendant had been drinking. He requested that a jury instruction on intoxication be given. The trial court did not give the requested instruction[8] but instead gave its own:

"The defendant here claims that due to intoxication by alcohol he did not have the required intent. While it is true that such intoxication cannot excuse crime, it is equally true that when as here a specific intent is a necessary element in a crime the crime cannot have been committed when the intent did not exist. If you determine that for any reason whatever the defendant did not have the intent required, then he is not guilty. In determining whether the defendant had the required intent you should consider all the evidence in the case which bears upon intent including that as to intoxication."

The defendant compares this to the instruction declared erroneous in *People v Kelley,* 21 Mich App 612; 176 NW2d 435 (1970), *lv den* 383 Mich 792 (1970). The *Kelley* Court found the second part of an instruction erroneous because it eliminated the distinction between general intent and specific intent, *Kelley,* p 625, destroying intoxication as a potential defense. It implied that one who drinks

---

[8] The defendant requested that criminal jury instruction 6:1:02 be given.

voluntarily is criminally responsible for all resulting actions. *Kelley,* p 626.

We need not reach the issue of whether the court's instruction ran afoul of the *Kelley* proscriptions because the crime of resisting and obstructing a police officer is a general intent crime. *People v Gleisner,* 115 Mich App 196; 320 NW2d 340 (1982). Any error in instructing on specific intent was therefore harmless beyond a reasonable doubt. GCR 1963, 529.1.

Affirmed.