PEOPLE v CHATFIELD

Docket No. 62979. Submitted May 3, 1983, at Grand Rapids.—Decided
June 18, 1985.

Robert L. Chatfield was convicted of resisting and obstructing
an arrest and malicious destruction of police property, Branch
Circuit Court, Thomas C. Megargle, J. Defendant initially had
been placed under arrest for disorderly conduct under an
ordinance of the City of Coldwater and had kicked the door of a
police car while struggling with police officers who were at-
tempting to restrain him. Defendant appealed, alleging that the
convictions of both offenses constituted double jeopardy, that
the jury was not properly instructed regarding resisting arrest,
and that the city ordinance under which he was arrested was
unconstitutional. *Held:*

1. Defendant was not punished twice for the same offense.
The statutes prohibiting resisting arrest and malicious destruc-
tion of police property protect different interests and are in-
tended to prevent different types of harm. Conviction under
both statutes was proper.

2. Resisting and obstructing an arrest is not a specific intent

REFERENCES FOR POINTS IN HEADNOTES

[1] 21 Am Jur 2d, Criminal Law § 243 *et seq.*
Contempt finding as precluding substantive criminal charges relat-
ing to same transaction. 26 ALR4th 950.

[2, 7] 5 Am Jur 2d, Arrest § 80 *et seq.*
Modern status of rules as to right to forcefully resist illegal arrest.
44 ALR3d 1078.

[3] 12 Am Jur 2d, Breach of Peace and Disorderly Conduct §§ 8-13.
Validity and construction of statutes or ordinances prohibiting
profanity or profane swearing or cursing. 5 ALR4th 938.

[4] 5 Am Jur 2d, Arrest § 2.
Lawfulness of warrantless search of purse or wallet of person
arrested or suspected of crime. 29 ALR4th 771.

[5] 12 Am Jur 2d, Breach of Peace and Disorderly Conduct § 13.
Vagueness as invalidating statutes or ordinances dealing with
disorderly persons or conduct. 12 ALR3d 1448.

[6] 5 Am Jur 2d, Appeal and Error § 574.

[7] 5 Am Jur 2d, Arrest § 49.

crime and the trial court properly refused to instruct the jury that it is.

3. Defendant alleges that the trial court erred by refusing to give a curative instruction after the prosecutor, in closing argument, stated that the defendant's having called the police officer a bastard was sufficient for defendant to be arrested under the city ordinance. The error was harmless. The police had probable cause to make an arrest and the city ordinance was not unconstitutional. The jury instructions, in their entirety, were not incorrect.

Affirmed.

R. M. MAHER, J., dissented. He would hold that the jury was not properly instructed on the defendant's right to resist an arrest. If the defendant's version of the incident were to be believed the police officers would not have had probable cause to believe that defendant violated the ordinance, because merely calling the police officer a bastard would be speech protected by the First Amendment. The Coldwater ordinance should be narrowly interpreted to prohibit only the use of "fighting words" and, as such, cannot prohibit the defendant's conduct as described by the defendant. Defendant could, therefore, have been entitled to resist the arrest. Judge Maher would hold that the jury should have been so instructed, that the error was not harmless, and that defendant's conviction of resisting and obstructing an arrest should be reversed.

OPINION OF THE COURT

1. CRIMINAL LAW — DOUBLE JEOPARDY — RESISTING ARREST — MALICIOUS DESTRUCTION OF POLICE PROPERTY.

A defendant is not placed twice in jeopardy by convictions of both resisting arrest and malicious destruction of police property, resulting from one criminal episode, because the statutes under which he is convicted were each intended to prevent a different type of harm and protect two different interests (MCL 750.337b, 750.479; MSA 28.609[2], 28.747).

2. CRIMINAL LAW — RESISTING ARREST.

Resisting and obstructing an arrest is not a specific intent crime (MCL 750.479; MSA 28.747).

3. CONSTITUTIONAL LAW — PROTECTED SPEECH — OFFENSIVE COARSE LANGUAGE.

A city ordinance which prohibits harassment, harming another, or use of "offensive coarse language" is not unconstitutional as, using the common meaning of the words of the ordinance, the only offensive coarse language prohibited is that which by its

very utterance inflicts injury or tends to incite an immediate breach of the peace.

Dissent by R. M. Maher, J.

4. Arrest — Ordinances — Constitutional Law — Lawful Arrest.

An arrest or search and seizure is not rendered unlawful because of a subsequent judicial determination that the ordinance pursuant to which the arrest or search is made is unconstitutional where the arrest or search was otherwise lawful.

5. Statutes — Speech — Constitutional Law — Judicial Construction.

A statute or ordinance regulating speech must either facially comply with the requirements of the First Amendment or be amenable to interpretation so as to comply with those requirements in order to withstand constitutional scrutiny under either a vagueness or an overbreadth analysis.

6. Appeal — Judicial Construction.

The Court of Appeals has the duty to interpret statutes and ordinances so as to preserve their constitutionality.

7. Criminal Law — Resisting Arrest — Jury Instructions.

It is error requiring reversal of a conviction for resisting arrest for a trial court to have refused to instruct the jury that if they believed defendant's version of the incident he was entitled to resist the arrest because of its unlawfulness where there was a factual question of whether the police had probable cause to believe the defendant had violated the ordinance under which he was arrested.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *John L. Livesay,* Prosecuting Attorney, and *Leonard J. Malinowsky,* Assistant Attorney General, for the people.

*J. Richard Colbeck,* for defendant on appeal.

Before: D. E. Holbrook, Jr., P.J., and R. M. Maher and P. R. Joslyn,* JJ.

D. E. Holbrook, Jr., P.J. Defendant appeals as of right from his convictions following a jury trial

* Circuit judge, sitting on the Court of Appeals by assignment.

for resisting and obstructing an arrest, MCL 750.479; MSA 28.747, and malicious destruction of police property, MCL 750.337b; MSA 28.609(2). He was sentenced to two concurrent 6-month terms of imprisonment.

Both convictions arose from an incident that occurred on May 20, 1981. Sergeant Sturgeon of the Coldwater police was dispatched to investigate a disturbance. When he arrived at the scene he discovered a number of people on the property, many of whom were pushing and shoving each other. Sturgeon testified that, while he was attempting to investigate, defendant ran up to him and began yelling and screaming obscenities at him, demanding that he leave the property. Sturgeon repeatedly told defendant not to interfere, but defendant continued his yelling and shook his finger in Sturgeon's face. During much of his tirade defendant had his face within two inches of Sturgeon's. Finally, defendant was arrested for disorderly conduct under Coldwater City Ordinance, § 9.[1] Sturgeon by that time was assisted by another police officer. There was a struggle to get defendant in the police car and once in the auto defendant continued to struggle. Defendant kicked the car door twice, resulting first in the door's flying into Sturgeon's midsection, and then shattering the window.

Defendant's testimony alleged that he had calmly called the officer a bastard and that the window shattered because the car door was closed on his feet.

---

[1] "That no person shall with the purpose to harass or harm another or with reckless disregard of the sensibility of another make a communication anonymously or at extremely inconvenient hours or in offensive coarse language. And no person shall make or assist in making any noise, disturbance, trouble, or improper diversion or any rout, or riot by which the peace and good order of the city of Coldwater will be disturbed."

On appeal defendant contends that being convicted on both counts violated his right to be protected against double jeopardy, that the ordinance he was arrested under was unconstitutional, and that reversible error occurred in that the jury was not instructed that resisting an arrest is a specific intent crime. We do not agree and defendant's convictions are affirmed.

Defendant argues that as both convictions arose from the same transaction he is receiving multiple punishments for the same offense. *North Carolina v Pearce,* 395 US 711; 89 S Ct 2072; 23 L Ed 2d 656 (1969). The prosecution contends that there were two acts: one wherein defendant kicked the door in an attempt to resist arrest, and a second wherein defendant was angered and kicked to vent his anger. When the convictions are based on two separate acts, there is no double jeopardy problem. *People v Haynes,* 100 Mich App 306; 298 NW2d 732 (1980). Even if both convictions are based on one instance of kicking, defendant's rights still have not been violated. Each statute under which defendant was convicted was intended to prevent a different type of harm. The resisting arrest statute is intended to prevent interference with an arrest. *People v Gleisner,* 115 Mich App 196; 320 NW2d 340 (1982), *lv den* 417 Mich 1095 (1983). The malicious destruction of police property statute is intended to protect property. *People v Richardson,* 118 Mich App 492; 325 NW2d 419 (1982), *lv den* 417 Mich 949 (1983). Accordingly, as two different interests are protected, there is no double jeopardy violation. *People v Robideau,* 419 Mich 458; 355 NW2d 592 (1984).

Defendant next argues that the trial court erred by failing to instruct the jury that resisting and obstructing an arrest is a specific intent crime. This argument is without merit. *People v Landrie,*

124 Mich App 480, 483; 335 NW2d 11 (1983); *People v VanWasshenova,* 121 Mich App 672, 680; 329 NW2d 452 (1982); *People v Gleisner, supra.*

Defendant reasons that because the prosecutor, in his closing argument, stated that the use of the word "bastard" was sufficient in and of itself to arrest defendant, and since the trial judge refused to give an instruction[2] on this, his conviction must be reversed.

While we do agree that the use of the term "bastard" is constitutionally protected, we do not find the people's one reference to the contrary in closing argument to constitute reversible error. Defense counsel corrected the prosecution's error in his closing argument, elaborating on it for several pages, saying in part:

"Why was he arresting him? What was he arresting him for? Counsel says it's the use of the word 'bastard'. He called them a bastard. Therefore he arrested him. In and of itself that should be sufficient, counsel says. Well, that isn't what the city ordinance says. The Judge is going to read that to you."

The trial judge did read the city ordinance under which defendant was arrested, as set forth in footnote 1, *supra.* Our review of this ordinance reveals that it is constitutional. Harass as defined by *Webster's Seventh New Collegiate Dictionary,* means: "to worry and impede by repeated raids * * * to annoy continually * * *." Harm requires "physical or mental damage". Reckless disregard is to be indifferent to the consequences, wanton and willful or careless, inattentive or negligent. *Black's Law Dictionary,* Revised 4th ed, 1968, p 1435. Using the common, everyday meaning of the

---

[2] Defendant requested an instruction that he could not have been legally arrested for the use of the word bastard due to First Amendment protections.

words, *R & T Sheet Metal, Inc v Hospitality Motor Inns, Inc,* 139 Mich App 249; 361 NW2d 785 (1984), we believe that the only offensive coarse language prohibited is that which by its very utterance inflicts injury or tends to incite an immediate breach of the peace. *Chaplinsky v New Hampshire,* 315 US 568, 572; 62 S Ct 766, 769; 86 L Ed 1031, 1035 (1942).

"The existence of probable cause to arrest depends in every case upon the peculiar circumstances confronting the arresting officer." *People v Mitchell,* 138 Mich App 163, 167; 360 NW2d 158 (1984).

We have carefully reviewed the facts and find the evidence sufficient to sustain defendant's convictions. We believe the officer had probable cause to make a lawful arrest. A rational trier of fact could have found all the necessary elements present. *People v Richardson,* 139 Mich App 622; 362 NW2d 853 (1984).

We hold the prosecution's one improper comment during its closing argument to be harmless error. GCR 1963, 529.1. The jury instructions, when viewed in their entirety, were not incorrect. *People v Seabrooks,* 135 Mich App 442, 452; 354 NW2d 374 (1984).

Accordingly, defendant's convictions are affirmed.

P. R. JOSLYN, J., concurred.

R. M. MAHER, J. *(dissenting).* I respectfully dissent. While I agree with the majority's disposition of the first two issues, I do not agree that defendant was given a fair trial before a properly instructed jury on the issue of whether or not he had had the right to resist an arrest, the charge on which he was convicted.

As stated in the majority's opinion, there was a marked divergence in the testimony of the prosecution and defense witnesses, with other evidence supporting each of the versions. The version recounted by the police officers depicted defendant violently and repeatedly yelling obscenities at the police officers and telling them to get off the property, while defendant testified that he had not done this but had, instead, merely calmly and coolly called the police officers bastards. During his closing argument, the prosecutor stated:

"Even if you take the defendant's version of what happened, if you want to do that, that all he did was coolly and calmly and rationally call the officers bastards. I submit that that in and of itself under the language of the statute or the city ordinance makes him guilty—makes the arrest a lawful arrest for disorderly conduct."

Defense counsel then asked the trial court to instruct the jury that defendant would not have been legally arrested under the First Amendment had he merely used the word "bastard". The question of the legality of the arrest was critical to defendant's defense of justified resistance to an unlawful arrest—if the arrest were legal, defendant would not have had the right to resist the arrest.[1] The trial court refused this request, citing

---

[1] An element of resisting arrest is that the defendant resisted an authorized officer who was legally arresting him. Hence, if defendant's arrest was in fact illegal, he had the right to reasonably resist the arrest. *People v Krum,* 374 Mich 356; 132 NW2d 69 (1965), *cert den* 381 US 935; 85 S Ct 1765; 14 L Ed 2d 699 (1965); *People v Stark,* 120 Mich App 350; 327 NW2d 474 (1982); *People v Eisenberg,* 72 Mich App 106; 249 NW2d 313 (1976), *lv den* 401 Mich 803 (1977); *People v Gray,* 23 Mich App 139; 178 NW2d 172 (1970).

I note, however, that outside this state the modern trend has been away from this common law rule toward a rule which provides that even if the arrest is illegal, the arrestee may not resist: "It should be possible to provide adequate remedies against illegal arrest, without

*Michigan v De Fillippo,* 443 US 31; 99 S Ct 2627; 61 L Ed 2d 343 (1979). The court reasoned that because Coldwater's ordinance had never been declared unconstitutional and because the language of the ordinance was very broad, whether or not merely calling police officers "bastards" would violate the ordinance was a question for the jury.

In *De Fillippo,* the defendant was arrested under a Detroit municipal ordinance which made it illegal to falsely identify oneself if stopped and questioned pursuant to the ordinance. After the defendant was arrested, the police found marijuana in his pockets and phencyclidene in a pack of cigarettes. In the trial court, the defendant moved to suppress this evidence and his motion was denied. On appeal to this Court, the Court held the ordinance unconstitutional because it was too vague, and ordered the evidence suppressed as the product of an illegal search and arrest, *People v De Fillippo,* 80 Mich App 197; 262 NW2d 921 (1977), *lv den* 402 Mich 921 (1978). The case was eventually appealed to the United States Supreme Court. *Michigan v De Fillippo, supra.*

The United States Supreme Court reversed this Court's decision to suppress the evidence. The Supreme Court held that the original arrest had been made pursuant to a presumptively valid ordinance, had been legal, and that merely because the ordinance was later held to be unconstitutional did not by itself invalidate the otherwise legal arrest:

"Police are charged to enforce laws until and unless

permitting the arrested person to resort to force—a course of action highly likely to result in greater injury even to himself than the detention." ALI Model Penal Code, art 3, § 3.04(2), comment. See also *People v Dillard,* 115 Mich App 640, 645; 321 NW2d 757 (1982), (KNOBLOCK, J., dissenting), and Anno., *Modern Status of Rules As to Right to Forcefully Resist Illegal Arrest,* 44 ALR3d 1078, 1087-1090.

they are declared unconstitutional. The enactment of a law forecloses speculation by enforcement officers concerning its constitutionality * * *. Society would be ill-served if its police officers took it upon themselves to determine which laws are and which are not constitutionally entitled to enforcement." 443 US 38; 99 S Ct 2632; 61 L Ed 2d 350.

This holding has been interpreted to mean that "[t]he validity of the arrest is not affected by the subsequent judicial determination that the ordinance is unconstitutional". *People v Hunter (On Remand)*, 94 Mich App 50, 52; 287 NW2d 366 (1979). See also *Green v District of Columbia*, 228 US App DC 365; 710 F2d 876 (1983).

This holding must, however, be viewed in its proper context. *De Fillippo* involved a determination that a lawful search and seizure incident to an arrest under a presumptively valid ordinance is not rendered unlawful simply because the ordinance is later declared unconstitutional. *De Fillippo* does not declare that no arrest may ever be found unlawful simply because it was made pursuant to a presumptively valid ordinance or statute. For instance, *De Fillippo* did not invalidate the entire body of jurisprudence which requires that an arresting police officer have probable cause to arrest before making an arrest. In addition, *De Fillippo* did not overrule United States Supreme Court precedent which forbids arresting and convicting a person for exercising his First Amendment right to free speech. Instead, *De Fillippo* merely declares that where an arrest or search and seizure incident to an arrest was otherwise lawful, it is not rendered unlawful because the ordinance is later found to be unconstitutional.

Thus, the question before us is whether or not defendant could be lawfully arrested under the Coldwater ordinance for clamly calling a police

officer a "bastard" where the ordinance had never been declared unconstitutional. I believe that he could not be lawfully arrested for such conduct, and that defendant was therefore entitled to the jury instruction requested by him.

The First Amendment of the United States Constitution protects most forms of expression—even those which may be considered distasteful, vulgar, or offensive to another person. This was made clear in *Cohen v California,* 403 US 15; 91 S Ct 1780; 29 L Ed 2d 284 (1971), where the Supreme Court reversed the conviction of a defendant arrested and convicted for wearing a coat emblazoned with the words "fuck the draft":

> "Surely the State has no right to cleanse public debate to the point where it is grammatically palatable to the most squeamish among us. Yet no readily ascertainable general principle exists for stopping short of that result were we to affirm the judgment below. For, while the particular four-letter word being litigated here is perhaps more distasteful than most others of its genre, it is nevertheless often true that one man's vulgarity is another's lyric. Indeed, we think it is largely because governmental officials cannot make principled distinctions in this area that the Constitution leaves matters of taste and style so largely to the individual." 403 US 25; 91 S Ct 1788; 29 L Ed 2d 294.

This freedom of expression is not, however, without its limits. In *Chaplinsky v New Hampshire,* 315 US 568, 572; 62 S Ct 766, 769; 86 L Ed 1031, 1035 (1942), the Supreme Court held that "fighting words" are outside the protection of the First Amendment. As defined by the Supreme Court, "fighting words" are words "which by their very utterance inflict injury or tend to incite an immediate breach of the peace". Thus, to withstand constitutional scrutiny under either a vagueness

or overbreadth analysis, a statute or ordinance must either facially comply with the requirements of the First Amendment or be amenable to interpretation so as to comply with those requirements. *Gooding v Wilson,* 405 US 518; 92 S Ct 1103; 31 L Ed 2d 408 (1972); *Oak Park v Smith,* 79 Mich App 757; 262 NW2d 900 (1977); *People v Klein,* 67 Mich App 556; 242 NW2d 436 (1976); *People v Purifoy,* 34 Mich App 318, 320; 191 NW2d 63 (1971).

According to defendant's evidence at trial, defendant was arrested for calmly referring to a police officer as a "bastard". Arguably, under the terms of the Coldwater ordinance, this would constitute "offensive coarse language" used "with the purpose to harass or harm another or with reckless disregard of the sensibility of another" and would therefore be grounds for an arrest. However, the mere fact that protected conduct or protected speech arguably is prohibited by an ordinance does not, by itself, legally justify the arrest. Here, defendant's version of the events describes protected speech. In *Oak Park v Smith, supra,* the defendant, while involved in a minor traffic altercation, had given a plainclothes police officer "what is commonly known as the finger, by extending his index finger upward, and his lips were observed to move in what [the officer] believed to be an obscene utterance". 79 Mich App 759. This Court found that these actions under the facts of the case did not constitute the use of "fighting words", although they could well be considered "immature" and hurtful to the officer's pride. 79 Mich App 762. In this case, the described conduct may also have been immature and offensive, but the calm use of the word "bastard" as described by defendant, especially to a police officer, does not inflict injury or tend to incite an immediate breach of the peace:

"[A] properly trained officer may reasonably be expected to 'exercise a higher degree of restraint' than the average citizen, and thus be less likely to respond belligerently to 'fighting words.' " *Lewis v New Orleans,* 415 US 130, 135; 94 S Ct 970, 973; 39 L Ed 2d 214, 220 (1974) (Powell, J., concurring).

Therefore, if the Coldwater ordinance were to be interpreted to prohibit defendant's version of his conduct, the ordinance would be unconstitutional as being overly broad. This Court, however, has the duty to interpret statutes and ordinances so as to preserve their constitutionality. As was done by this Court in *Oak Park, supra,* I would, therefore, narrowly interpret the Coldwater ordinance to prohibit only the use of "fighting words".

As so interpreted, the Coldwater ordinance cannot prohibit the conduct described by defendant. Assuming defendant's version of the events to be correct, the police officers therefore lacked probable cause to believe that defendant had violated the ordinance as constitutionally interpreted. Probable cause is the mandatory minimum essential for a lawful arrest. *United States v Watson,* 423 US 411, 417; 96 S Ct 820, 824-825; 46 L Ed 2d 598, 605 (1976); *People v Hamoud,* 112 Mich App 348, 351; 315 NW2d 866 (1981), *lv den* 414 Mich 959 (1982). Thus, under the law of this state, defendant was entitled to resist. (See footnote 1.)

A similar factual situation was presented to the Maryland Court of Appeals in *Diehl v State,* 294 Md 466; 451 A2d 115 (1982), *cert den* 460 US 1098; 103 S Ct 1798; 76 L Ed 2d 363 (1983). There, the defendant was stopped for a traffic offense and responded by yelling obscenities at the police officer. The defendant was then arrested for disorderly conduct but resisted and temporarily escaped. After he was apprehended, he was con-

victed of disorderly conduct and two counts of resisting arrest. The Maryland Court of Appeals first interpreted the ordinance prohibiting disorderly conduct so that it complied with the mandates of the First Amendment. As so interpreted, the court found that the defendant's conduct did not amount to "fighting words": "In such tense moments, one man's vulgarity may well be another's vernacular." 451 A2d 122. The court then found that since the correctly-interpreted ordinance did not prohibit the defendant's conduct, the police officer had lacked probable cause to arrest the defendant under the ordinance. The arrest had therefore been unlawful and the defendant had therefore been entitled to resist.

Under this analysis, the trial court in this case erred by denying defendant's request for an instruction to the jury that, if the jury believed defendant's version, defendant was entitled to resist arrest. The failure to give this instruction requires reversal of defendant's conviction for resisting arrest because it directly affects the jury's determination that defendant was not entitled to resist. I do not agree with the majority that this Court can assume that the jury disregarded the prosecutor's incorrect statement of the law and followed defense counsel's argument on the ordinance, especially when the jury was expressly instructed to take the exposition of the law *only* from the court and not from the attorneys. In addition, the jury was never instructed that the police could not have arrested defendant under the ordinance for doing what he claimed he had done, even though that statement was the very heart of defendant's defense. The court refused to support defendant's defense with a properly requested and correct instruction on the law. I would reverse the conviction on the first count.