#30681-aff in pt& rev in pt-PJD
**2025 S.D. 29**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

v.

ISAIAH VAUGHN ROUSE,                      Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SIXTH JUDICIAL CIRCUIT
HUGHES COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE M. BRIDGET MAYER
Judge

* * * *

KATIE J. THOMPSON
Pierre, South Dakota                      Attorney for defendant and
                                          appellant.


MARTY J. JACKLEY
Attorney General

JENNIFER M. JORGENSON
Assistant Attorney General
Pierre, South Dakota                      Attorneys for plaintiff and
                                          appellee.

* * * *

CONSIDERED ON BRIEFS
JANUARY 13, 2025
OPINION FILED **06/20/25**

DEVANEY, Justice

[¶1.]    Isaiah Rouse was convicted of three counts of aggravated assault (physical menace) against a law enforcement officer and one count of threatening a law enforcement officer.  He appeals, claiming the circuit court erred by not dismissing the case under the 180-day rule and by denying his motion for judgment of acquittal, and further claims the circuit court abused its discretion when admitting evidence and giving certain instructions to the jury.  We affirm in part, reverse in part, and remand for a new trial.

## Factual and Procedural Background

[¶2.]    In January 2023, Rouse was in custody in the maximum security cellblock of the Hughes County Jail awaiting trial on an aggravated assault charge.  According to the evidence introduced at trial, on the evening of January 13, correctional officer (CO) Harlie Petrak was doing rounds when Rouse approached her and stated, "I need my medication or the next CO to come in here will be stabbed."  CO Petrak thereafter contacted the nurse, who confirmed that Rouse had not yet received his evening medication.  When the nurse arrived, CO Petrak called Rouse to come to the door of the cellblock so he could receive his medicine.  This door is between the cellblock where maximum security inmates are housed and the central area where the correctional officers are stationed.  Inmates are supposed to stay within their cellblock when taking their medicine and are not permitted to come out of the cellblock unless brought out by an officer.

[¶3.]    As Rouse approached the door, CO Petrak, who was standing outside the cellblock while holding the door open, told him to stay inside the cellblock.

Instead of stopping at the door, Rouse continued out of the cellblock into the officers' area and obtained his medicine from the nurse. CO Petrak ordered him to go back into the cellblock but Rouse refused, saying, "What the fuck are you going to do about it? Nothing. Exactly." CO Petrak described Rouse as appearing very frustrated and agitated and testified that his fists were clenched. He told CO Petrak he wanted to talk to the person in charge. Shift supervisor Brant Billings, who was at the officers' station podium, asked what was going on. Rouse responded, "What are you going to do about it?" CO Billings called additional officers to respond to the area and approached Rouse. Because Rouse was not following the officers' commands, CO Billings ordered him to "cuff up," or turn around and put his hands behind his back to be handcuffed. Rouse refused to comply. Instead, he set his medicine cup down and put his fists down to his side, and stated, "Which one of you motherfuckers are going to come at me and are going to be stabbed first?" As Rouse stood facing the officers, the officers saw he was firmly gripping in his left hand a small pencil, its well-sharpened point facing forward.[1]

[¶4.] The officers immediately recognized the seriousness of the situation, as they knew the sharpened pencil could be used as a weapon. The officers testified that because sharpened pencils have been known to be used by inmates to stab

---

1. According to testimony admitted at trial, inmates are provided three-inch "golf" pencils for writing, but they are prohibited from bringing them outside the cellblock.

themselves or others, officers consider them potentially lethal objects.[2] At that point, officers Billings, Petrak, and another CO, Zach Knowlton, were in the vicinity of Rouse. Other officers soon responded to the area. CO Billings ordered Rouse to drop the pencil, but Rouse refused. CO Petrak took several steps back from him to maintain distance, as CO Billings talked to Rouse in an effort to de-escalate the tense situation. He commanded Rouse multiple times to drop the pencil but Rouse did not do so.

[¶5.] CO Billings made his way to the officers' station and retrieved a taser and gave it to CO Knowlton. Under jail policy, a taser may only be brought out when an officer believes there is a threat to the officer or others. CO Billings told Rouse he had one last chance to drop the pencil, to which Rouse replied, "Or what? You going to tase me?" On CO Billings' signal, CO Knowlton activated the taser. Rouse then complied without being tased. He snapped the pencil in half and threw it toward CO Billings, who ordered him to cuff up. Rouse was then handcuffed and led away to a cell. Approximately an hour later, CO Petrak took water to Rouse in the cell. At that time, he apologized to her and said he was sorry about the comments that he had made.

[¶6.] Rouse remained in maximum security custody at the jail. On February 25, 2023, CO Zane Hesse entered the maximum security cellblock. When Rouse saw him, he said he would be getting out of jail in two weeks and then he was going

---

2. During the trial testimony, an example was provided involving a prior incident at the jail when an inmate used a sharpened pencil to stab his arm, causing blood to spray across the room. This inmate was taken to the hospital with serious injuries.

to stab CO Hesse. When the officer, who was unsure if Rouse was serious, responded in a joking manner, Rouse did not laugh. Instead, he asked CO Hesse, "Do you think I'm joking? I'm being serious." CO Hesse left the cellblock and reported the incident to his supervisor.

[¶7.] On March 7, 2023, a grand jury indicted Rouse on three counts of aggravated assault (physical menace) against a law enforcement officer involving the incident on January 13, 2023. The victims identified in these felony counts were officers Petrak, Billings, and Knowlton. In the same indictment, Rouse was also charged with threatening a law enforcement officer, a class 1 misdemeanor, involving the incident on February 25, 2023 with CO Hesse. The State filed a part II information alleging two prior felonies. Rouse made his initial appearance before a magistrate judge on March 13, 2023.

[¶8.] During the pendency of this case, he also faced felony charges in other Hughes County criminal cases. This included CRI22-564, in which Rouse was charged with aggravated assault stemming from an incident where he was alleged to have stabbed a person with a knife in September 2022, resulting in serious bodily injury. Another case (CRI22-661) involved a separate aggravated assault charge alleging that in September 2022, Rouse struck a person and broke his jaw. As a result of these events, he was arrested and incarcerated in the jail, where he remained at the time of the incidents at issue in this appeal.

[¶9.] Rouse was appointed counsel, who represented him in all three Hughes County cases. The circuit court judge in this case presided over all three cases as

well. Rouse's trial in CRI22-661 was held on May 31 and June 1, 2023, after which the jury found him not guilty of aggravated assault but guilty of simple assault.

[¶10.]     In the present case, a jury trial was set to begin October 25, 2023. On the morning of September 7, 2023, Rouse's counsel electronically filed several motions, including a motion for disclosure of Rule 404(b) and Rule 609 evidence. His counsel also electronically filed a separate motion for appointment of a private investigator. Later that same day, the circuit court electronically signed and filed orders granting all of Rouse's motions.

[¶11.]     The court held a pretrial conference on October 18. The court and the parties discussed the motions filed by defense counsel on September 7, and the court also noted a letter Rouse had sent to the court asserting that a trial had not been set for this case within the 180-day timeframe. The court explained that when the proposed orders were presented to the court electronically on September 7, the court granted them under the mistaken belief that a motion hearing had been held, but it had not. The court stated that those orders were prematurely signed because the State was not first given an opportunity to be heard before they were signed the same day the motions were filed. The court stated that "technically, I signed those orders[,]" but "I'm now granting it technically today[.]" The court directed the parties to calculate when the 180 days would run "with that in mind" and file motions if they deemed it necessary.

[¶12.]     The State filed a motion seeking to toll certain time periods under SDCL 23A-44-5.1, noting that based on Rouse's initial appearance date of March 13, 2023, the 180 days would have ended September 9, 2023, unless otherwise tolled.

The State argued that days should be excluded due to Rouse's motions filed on September 7 and orally granted on October 18, as well as days relating to the proceedings in Rouse's other criminal case (CRI22-661), from the date of the pretrial order through the conclusion of the jury trial on June 1. In addition, among other motions, the State filed an other acts motion pursuant to SDCL 19-19-404(b) seeking to introduce evidence that the correctional officers were aware that the reason Rouse was in custody at the jail was because he was arrested for allegedly stabbing an individual with a knife in September 2022, resulting in serious bodily injury.

[¶13.]     On October 20, Rouse's counsel filed a motion to dismiss, alleging a violation of the 180-day rule. Counsel objected to the exclusion of any days and, alternatively, disputed the number of days the State argued should be excluded. On October 24, the court held a hearing and ruled on the motions. The court denied the motion to dismiss, ruling that several days were excludable from the 180-day calculation under SDCL 23A-44-5.1(4), which it explained on the record. The court later entered written findings and conclusions detailing the days excluded under SDCL 23A-44-5.1(4)(a). The court excluded the seven days following a May 25, 2023 pretrial conference held in one of Rouse's other pending criminal cases (CRI22-661) through the completion of the jury trial in that case on June 1, 2023. The court also noted that, in this case, at the time Rouse filed his motions on September 7, 2023, the 180 days had not yet expired. The court determined that the orders that it inadvertently or mistakenly entered on the same date Rouse's motions were filed were invalid. Citing this Court's rulings in *State v. Seaboy*, 2007 S.D. 24, 729

N.W.2d 370 and *State v. Sparks*, 1999 S.D. 115, 600 N.W.2d 550, the circuit court then concluded that all of the days after September 7 until the trial commenced on October 25 were tolled because there were no written orders entered after the court orally granted the motions at the October 18 hearing.

[¶14.] The court granted the State's other acts motion on the basis that the officers' knowledge of the reason Rouse was in jail was admissible as res gestae evidence. After a two-day jury trial starting on October 25, the jury found Rouse guilty on all counts.

[¶15.] On appeal Rouse raises the following issues, which we have restated and reordered:

> 1. Whether the circuit court erred in denying the motion to dismiss the indictment due to a violation of the 180-day rule.
>
> 2. Whether the circuit court erred by not granting Rouse's motion for judgment of acquittal.
>
> 3. Whether the circuit court abused its discretion by allowing the State to introduce the correctional officers' testimony about the reason Rouse was in jail.
>
> 4. Whether the circuit court abused its discretion when instructing the jury.

### Analysis and Decision

> ### *1. Whether the circuit court erred in denying the motion to dismiss the indictment due to a violation of the 180-day rule.*

[¶16.] Rouse claims the circuit court erred in denying his motion to dismiss for a violation of SDCL 23A-44-5.1, commonly referred to as the "180-day rule." Under that rule, "a criminal defendant must be brought to trial within 180 days

from the date the defendant 'has first appeared before a judicial officer on an indictment, information, or complaint.'" *State v. Andrews*, 2009 S.D. 41, ¶ 7, 767 N.W.2d 181, 183 (quoting SDCL 23A-44-5.1(2)). However, the rule includes several provisions that require the exclusion, or tolling, of certain periods of time from the 180-day calculation. Relevant here, the rule excludes the following timeframes:

> (a) The period of delay resulting from other proceedings concerning the defendant, including but not limited to . . . the time from filing until final disposition of pretrial motions of the defendant, . . . and the time consumed in the trial of other charges against the defendant[.]

SDCL 23A-44-5.1(4).

[¶17.] Here, as his sole claim on appeal regarding the 180-day issue, Rouse argues the court erred when excluding certain days attributable to the proceedings in Rouse's other criminal case that went to trial, CRI22-661. In its written findings of fact and conclusions of law, the court, citing SDCL 23A-44-5.1(4)(a), excluded not only the two days the parties spent in trial, but also the five days leading up to it, which the court considered to be trial preparation time. Rouse contends that the language of SDCL 23A-44-5.1(4)(a) requiring tolling for "the time consumed in the trial of other charges against the defendant" should be narrowly read to exclude only the two days that the parties were actually in trial. However, we need not address the merits of the court's ruling in that regard given the court's other conclusion related to the tolling attributable to Rouse's September 7 motions.

[¶18.] Rouse made his initial appearance before the magistrate judge on March 13, 2023. Even if, as Rouse suggests, the circuit court should have only excluded two days for the time consumed in Rouse's other trial, when Rouse later

filed his motions on September 7, only 176 days had passed since his initial appearance. Per the court's additional ruling, Rouse's trial commenced within 180 days because the "clock" stopped when Rouse filed these motions and it never started running again because there were no valid written orders filed disposing of the September 7 motions. *See Seaboy*, 2007 S.D. 24, ¶ 9 n.4, 729 N.W.2d at 373 n.4 and *Sparks*, 1999 S.D. 115, ¶ 7, 600 N.W.2d at 554. Rouse has not challenged this latter ruling, which resolves the 180-day issue in the State's favor. *See Cook v. Cook*, 2022 S.D. 74, ¶ 27 n.6, 983 N.W.2d 180, 190 n.6 (declining to review a determination of the circuit court that was not challenged by the appellant on appeal).

### 2. Whether the circuit court erred by not granting Rouse's motion for judgment of acquittal.

[¶19.] "This Court reviews a denial of a motion for judgment of acquittal de novo." *State v. Peneaux*, 2023 S.D. 15, ¶ 24, 988 N.W.2d 263, 269 (citation omitted). "[A] motion for a judgment of acquittal attacks the sufficiency of the evidence[.]" *Id.* (alterations in original). "In measuring the sufficiency of the evidence, we ask whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Frias*, 2021 S.D. 26, ¶ 21, 959 N.W.2d 62, 68 (citation omitted). "The jury is the exclusive judge of the credibility of the witnesses and the weight of the evidence, and this Court will not resolve conflicts in the evidence, pass on the credibility of witnesses, or weigh the evidence." *Peneaux*, 2023 S.D. 15, ¶ 24, 988 N.W.2d at 269 (cleaned up).

[¶20.]     Rouse was charged with three counts of aggravated assault pursuant to SDCL 22-18-1.1(5), which provides: "Any person who . . . [a]ttempts by physical menace with a deadly weapon to put another in fear of imminent serious bodily harm . . . is guilty of aggravated assault."  Each of the counts further alleged the aggravated assault was against a law enforcement officer engaged in the performance of official duties.  SDCL 22-18-1.05.

[¶21.]     At the close of the State's evidence Rouse moved for judgment of acquittal on the aggravated assault counts.  His sole basis for the motion was to allege the State failed to prove the "physical menace" element.  On appeal, he again challenges whether the physical menace element was satisfied beyond a reasonable doubt.[3]

[¶22.]     Under SDCL 22-18-1.1(5), "the gravamen of the offense is the attempt to put a person in fear of imminent serious bodily harm."  *State v. Robertson*, 2023 S.D. 19, ¶ 31, 990 N.W.2d 96, 104 (cleaned up) (quoting *Peneaux*, 2023 S.D. 15, ¶ 37, 988 N.W.2d at 272).  In *Robertson,* this Court explained "that the relevant question is not whether the alleged victim was in fear and '[i]nstead, the focus is on what the defendant was *attempting* to do[.]'"  *Id.*  (alterations in original) (citation omitted).  "Therefore, in determining whether the elements of this offense have been established, both words and actions may be pertinent."  *Id.*  Nevertheless, the element of physical menace "'requires more than words: there must be some physical act on the part of the defendant.'"  *State v. Scott*, 2019 S.D. 25, ¶ 19, 927

---

3.     Although Rouse's brief mentions the fact he was also charged with the misdemeanor count of threatening a law enforcement officer, he does not challenge the sufficiency of the evidence supporting that conviction.

N.W.2d 120, 127 (citation omitted). Rouse argues there was no physical act because he did not lunge at the officers or swing his arms at them. But that is not the only way physical menace may be shown.

[¶23.]    Here, Rouse first started the events when he approached CO Petrak and told her, "I need my medication or the next CO to come in here will be stabbed." Later, when she called him to the cellblock door so he could receive the medication from the nurse, he ignored CO Petrak's command to stay in the cellblock and continued into the officers' area and stated, "What the fuck are you going to do about it?" CO Petrak described him as agitated and stated his fists were clenched. Rouse ignored multiple commands from CO Billings, including to "cuff up." He then set his cup down, and with his fists to his sides, said to the officers who were near him, "Which one of you motherfuckers are going to come at me and are going to be stabbed first?" The officers testified that Rouse appeared to be aggravated and had a pencil in his clenched fist with the sharp point facing outward. He refused to drop the pencil despite multiple commands and did so only after it was evident he would be tased. We conclude that when the evidence is viewed in a light most favorable to the State, a rational jury could have found beyond a reasonable doubt that all essential elements were met and that the entirety of Rouse's actions leading up to, and in conjunction with, his threatening statements, constituted physical menace.

### 3. *Whether the circuit court abused its discretion by allowing the State to introduce the correctional officers' testimony about the reason Rouse was in jail.*

[¶24.]    This Court reviews evidentiary rulings for abuse of discretion. *State v. Belt*, 2024 S.D. 82, ¶ 20, 15 N.W.3d 732, 737. "An abuse of discretion is defined as a

'fundamental error of judgment, a choice outside the range of permissible choices, a decision, which on full consideration is arbitrary or unreasonable.'" *Id.* (citation omitted). "In order to justify relief on appeal, an evidentiary error 'must also be shown to be prejudicial.'" *Id.* (citation omitted). An error is prejudicial if there is "a reasonable probability that, but for [the error], the result of the proceeding would have been different." *State v. Carter*, 2023 S.D. 67, ¶ 26, 1 N.W.3d 674, 686 (alteration in original) (citation omitted). "In other words, 'a probability sufficient to undermine confidence in the outcome.'" *Id.* (citation omitted).

[¶25.] The State filed a motion to introduce other acts evidence pursuant to SDCL 19-19-404(b). It sought to present testimony from the correctional officers about their knowledge of the fact Rouse was in the jail on a pending aggravated assault charge at the time of the alleged offenses in this case. The motion provided a brief synopsis regarding Rouse's criminal case, CRI22-564, in which he was alleged to have used a knife to stab another person in September 2022. The synopsis related the nature of the alleged victim's wounds, but no additional details of what occurred. The State argued that the fact Rouse "is alleged to have actually stabbed someone causing serious bodily injury" was relevant to show a common plan or scheme "of using a dangerous weapon to stab another individual." The State asserted the facts of the other case were "very similar" to the present case.

[¶26.] At a hearing on the motion, the State explained it proposed to limit the testimony, more so than what it had suggested in its written motion, to only elicit from the correctional officers that they were aware Rouse was in custody on an aggravated assault charge for an alleged stabbing. The State suggested that this

would provide "necessary context as well as just the common plan or scheme for the jury." The State then commented that it did not then "need to go into the details of the arrest" or "the allegations in the underlying stabbing." The State further offered that the prior offense was "close in time and the traits of the two are similar" and suggested that any prejudice could be cured by "appropriate jury instructions for other acts."

[¶27.] The court inquired whether the State was offering the evidence as res gestae of the crime, to allow the officers "to explain what they know and why a common pencil, which all the inmates have, he's different from that set of folks because they know why he's there[.]" The court distinguished this from offering the evidence to show "he stabbed someone else before and this is his common pattern, practice, scheme and what he does when he gets upset," and noted that using the evidence in such manner would require a limiting instruction to be given to the jury.

[¶28.] In response, the State agreed that evidence relating to the officers' knowledge would be res gestae and then commented that it did not intend to bring in the facts of the underlying alleged crime, "just that he's there for an aggravated assault for a stabbing." The court then commented, "that to me is res gestae" but noted that the State was also arguing the alleged stabbing goes to pattern, practice, and scheme, and to show Rouse's motive and intent. Rouse objected to the admission of any evidence relating to the aggravated assault charge, arguing it was improper character evidence and was prejudicial.

[¶29.] When ruling on the State's motion, the circuit court concluded the proffered evidence was not improper character or propensity evidence and was not unfairly prejudicial. The court determined that the evidence could be introduced in the State's case-in-chief as part of the res gestae to show the officers' awareness of why Rouse was in their custody and, therefore, why they had concerns with what he might do when the events occurred at the jail. The court explained its view that the evidence was relevant to prove the elements of the offense, and that "the jury is entitled to know why [the officers were] in fear of imminent bodily harm with a pencil and why it's physical menace with a deadly weapon." The court concluded its ruling by stating "it comes in as res gestae, period. So we don't even need to get into whether or not it's other acts." The court further stated that, to the extent the State wanted to argue it as other acts, "that same evidence can be used to show intent, pattern, practice, common scheme."

[¶30.] At trial, CO Hesse testified that Rouse was in maximum security custody at the jail on two aggravated assault warrants. CO Petrak testified she was aware that Rouse was in the jail for aggravated assault and was thus classified as high risk and assigned to the maximum custody cellblock at the jail. Likewise, CO Billings testified that Rouse was in custody for an assault charge, perhaps having to do with a stabbing.

[¶31.] On appeal, Rouse contends this testimony was not res gestae evidence nor did it show "intent, pattern, practice, [or] common scheme." He maintains it was instead improper character evidence, irrelevant, and unfairly prejudicial and, therefore, the circuit court abused its discretion when admitting it.

[¶32.]    It does appear, from the record, that the State elected to only offer the testimony at issue to show the officers' awareness of the general nature of the crime for which Rouse was being held, something the circuit court deemed to be res gestae. As such, neither party requested an other acts instruction, nor did the court propose that one be given.

[¶33.]    As to the question whether the officers' testimony was properly characterized as res gestae, this Court considered what constitutes res gestae evidence in *State v. Otobhiale*:

> "'*Res gestae*' is a theory of relevance which recognizes that certain evidence is relevant because of its unique relationship to the charged crime . . . ." 29A Am. Jur. 2d Evidence § 858 Westlaw (database updated May 2022). "'*Res gestae*,' also known as intrinsic evidence, is evidence of wrongful conduct other than the charged criminal conduct offered for the purpose of providing the context in which the charged crime occurred." *Id.* Courts have classified evidence of other crimes as intrinsic evidence in the following circumstances:
>
> [when the evidence] provides the jury with a complete story of the charged crime[;] [i]ts absence would leave a chronological or conceptual void in the story of the crime[;] [i]t arose out of the same transaction or series of transactions as the charged offense[;] [i]t is so blended or connected with the crime charged that it incidentally involves it, explains the circumstances surrounding it, or tends logically to prove an element of the charged crime.

2022 S.D. 35, ¶ 16, 976 N.W.2d 759, 767 (alterations in original) (quoting 2 Weinstein's Federal Evidence § 404.20[2][c] (2d ed. 2021)). In *Otobhiale*, we recognized several of these bases as properly supporting the admission of evidence as res gestae. *Id.* ¶ 17 (citing *State v. Hoadley*, 2002 S.D. 109, ¶ 37, 651 N.W.2d 249, 258).

[¶34.] Here, however, there is no evidence suggesting that Rouse's other aggravated assault charge involving an alleged stabbing with a knife was in any way "blended or connected" to the allegations of aggravated assault against the correctional officers in the present case or that the absence of such evidence would "leave a conceptional void in the story of the crime." The State failed to offer any evidence to show that what happened in the prior alleged assault case was intrinsically related to the events at the jail some four months later.

[¶35.] Nor does that evidence tend to prove any element of the crimes charged. With respect to the elements of the aggravated assault offense, the circuit court concluded otherwise. As to the element of attempting to put another in fear of imminent bodily harm, the court stated:

> That's an element of the offense so . . . the jury is entitled to
> know why they're in fear of imminent bodily harm with a pencil
> and why it's physical menace with a deadly weapon and whether
> or not you're arguing that under these circumstances that
> became a deadly weapon, I assume. And again, fear of
> imminent bodily harm. These are elements of the offenses
> which is why I think it also has to come in.

But as explained above, this is an incorrect statement of the law. The State need not prove that the officers were actually in fear of imminent bodily harm; rather, the gravamen of the offense was what *Rouse* was *attempting* to do. *See Robertson*, 2023 S.D. 19, ¶ 31, 990 N.W.2d at 104. For all the above reasons, the officers' testimony was not res gestae evidence.

[¶36.] We note, however, that the fact an alleged victim's fear is not an element of the crime does not mean that evidence of what a victim was thinking can never be admitted in a trial involving this type of aggravated assault charge. In

fact, such testimony often is admitted to support a claim that a defendant was in fact acting in a manner that constituted a physical menace. *See People ex rel. R.L.G.*, 2005 S.D. 119, ¶ 13, 707 N.W.2d 258, 262 (noting that, while actual fear need not be proven, testimony regarding whether an alleged victim was afraid was relevant in assessing whether an assault by physical menace "occurred through the tone of the encounter and the posture of the parties").

[¶37.] But here, in addition to the correctional officers' testimony about their concerns related to Rouse's actions on the day of the charged offenses, they provided further testimony regarding their knowledge that Rouse was in jail on an unrelated aggravated assault charge, and that it was for allegedly stabbing someone. This additional testimony, purportedly offered to suggest another reason why they may have feared Rouse would carry out his threats to stab them, had *no intrinsic relationship* to Rouse's physical acts and threats during the incident in question. Because this was not res gestae evidence, the court abused its discretion in admitting it on that basis.

[¶38.] Additionally, given the sparse factual record presented by the State regarding the prior incident, the court's alternative pretrial ruling that this limited testimony was admissible under SDCL 19-19-404(b) to show Rouse's intent, or a common plan or scheme, was also an abuse of discretion. The State never offered evidence of the details of the alleged stabbing for which Rouse was being held. Thus, there is no record from which the court—let alone the jury—could make a comparison between the alleged prior stabbing and Rouse's alleged assault by physical menace against the correctional officers to determine whether the evidence

showed intent, or a common plan or scheme. Nor is there an evidentiary record from which the jury would have been able to determine that Rouse committed this other act. *See State v. Taylor*, 2020 S.D. 48, ¶ 39, 948 N.W.2d 342, 354 ("[B]efore considering the other acts, the jury must first determine if a preponderance of the evidence established that the defendant committed the other acts.")

[¶39.] Absent a proper basis for the admission of the fact Rouse was in jail for another alleged assault, the admission of this testimony violated the well-established rule precluding character or propensity evidence. *See* SDCL 19-19-404(a)(1); *State v. Hernandez*, 2023 S.D. 17, ¶ 32, 989 N.W.2d 525, 536 (noting that "propensity evidence 'cannot be used to prove conduct through an inference about the [individual]'s character, i.e., a general propensity to commit assaults'" (alteration in original)). For these reasons, we conclude that the circuit court abused its discretion in admitting this testimony.

[¶40.] When considering whether Rouse was prejudiced by the erroneous admission of this testimony, we must assess the overall evidence admitted during trial and how the erroneously admitted testimony was used by the State. Although the State did not mention why Rouse was in jail in its opening statement, in its closing argument to the jury, the State began its discussion of the evidence by noting that Rouse was housed in the area for "maximum custody high-risk inmates." The State further noted that officers "Petrak, Knowlton, and Billings knew that the [d]efendant was in custody on charges of aggravated assault" and CO

Billings testified that "he believed it to be for a stabbing."[4] No limiting instruction was given to the jury explaining the permissible and impermissible uses of this evidence, as would occur when evidence is properly admitted as other acts under Rule 404(b). *See State v. Wright*, 1999 S.D. 50, ¶ 17, n.6, 593 N.W.2d 792, 800 n.6. Thus, the jury could have decided to use the evidence for any purpose. And because the jury was properly instructed that the victims' actual fear need *not* be proven, there is a reasonable probability the jury may have improperly considered Rouse's other aggravated assault charge as evidence of a character trait or a propensity to commit violent crimes.

[¶41.] Further, while the other evidence relating to Rouse's physical acts here, when viewed in conjunction with his threatening statements, was sufficient to support a guilty verdict on the aggravated assault counts, the question whether this conduct constituted a physical menace is a close call. The video recording played for the jury does not contain any audio; it shows only the backside of Rouse, and it is hard to see the pencil Rouse was holding or the manner in which he was holding it. Defense counsel made a strong argument to the jury, based on what can be seen on the video, that Rouse was simply holding a two-and-half-inch pencil, an item all inmates are allowed to possess, with his arms at his side, and that he never brandished it in a manner constituting a physical menace. From our review of the

---

4.      Our review of the record reveals that CO Knowlton did not testify about his knowledge of the reason Rouse was in custody. CO Hesse, the alleged victim in the other incident that occurred on February 25, testified that Rouse was in custody on *two* aggravated assault warrants, even though the State's other acts motion, and the court's ruling, only pertained to one of Rouse's pending aggravated assault cases, CRI22-564.

record, we conclude that there is a reasonable probability that the jury would have reached a different outcome if the testimony about Rouse being in jail for an aggravated assault involving an alleged stabbing had not been admitted.  *See Carter*, 2023 S.D. 67, ¶ 26, 1 N.W.3d at 686.  We therefore conclude Rouse was prejudiced by the erroneous admission of this testimony such that a reversal and remand for a new trial on the aggravated assault counts is warranted.[5]  Because the remaining jury instruction issues may arise again on retrial, we address those issues below.

### 4.      *Whether the circuit court abused its discretion when instructing the jury.*

[¶42.]      Rouse contends the circuit court abused its discretion when it gave Instruction 15 and Instruction 21 to the jury.  It is well settled that:

> [a] trial court has discretion in the wording and arrangement of its jury instructions, and therefore we generally review a trial court's decision to grant or deny a particular instruction under the abuse of discretion standard.  However, when the question is whether a jury was properly instructed overall, that issue becomes a question of law reviewable de novo.  Under this de novo standard, we construe jury instructions as a whole to learn if they provided a full and correct statement of the law.

*State v. Pfeiffer*, 2024 S.D. 71, ¶ 38, 14 N.W.3d 636, 647 (quoting *State v. Black Cloud*, 2023 S.D. 53, ¶ 50, 996 N.W.2d 670, 683).

---

5.      It appears that Rouse's claim of prejudice regarding this issue pertains only to the aggravated assault charges.  Because he does not contend that there is a reasonable probability the jury would have rendered a different verdict on the misdemeanor charge of threatening a law enforcement officer, we limit the remand and retrial to the felony aggravated assault counts.

*Instruction 15*

[¶43.]    Here, the State was required to prove the elements of aggravated assault, including that:

> 1.    Defendant attempted to put [the law enforcement officer] in fear of imminent serious bodily injury,
>
>    . . .
>
> 4.    Defendant did so by means of a physical menace with a deadly weapon.

[¶44.]    In *State v. Scott*, after noting these elements, this Court addressed Scott's argument that his motion for judgment of acquittal was erroneously denied because the alleged victim was never in fear. In rejecting his argument, we provided the following explanation:

> Physical menace "requires more than words: there must be some physical act on the part of the defendant." [*R.L.G.*, 2005 S.D. 119, ¶ 10, 707 N.W.2d at 261]. However, the State need not prove "actual fear of imminent serious bodily harm." *State v. LaCroix*, 423 N.W.2d 169, 170 (S.D. 1988). Rather, an attempt to put another in fear exists when the defendant does "any act toward the commission of the crime but fails or is prevented or intercepted in the perpetration thereof." *R.L.G.*, 2005 S.D. 119, ¶ 9, 707 N.W.2d at 261 (quoting *State v. Schmiedt*, 525 N.W.2d 253, 255 (S.D. 1994)).

2019 S.D. 25, ¶ 19, 927 N.W.2d at 127.

[¶45.]    Rouse proposed a jury instruction that included just the first sentence from this quoted portion of our *Scott* opinion regarding physical menace: "Physical menace requires more than words: there must be some physical act on the part of the defendant." The circuit court denied Rouse's instruction as drafted. While the court agreed that the jury should be instructed on this principle, the court determined the jury should be instructed on "the whole law" and, thus, included not

only the first sentence but also the remaining two sentences of this paragraph from *Scott*, as reflected in final Instruction 15.

[¶46.] Rouse claims the additional sentences should not have been included but he does not contend this additional language is an incorrect statement of the law. The circuit courts are afforded discretion in determining the wording and arrangement of the instructions and we find no abuse of discretion in the court's reliance on this language from *Scott* when including this additional language to assist the jury in assessing the evidence presented.

[¶47.] However, we note that the last sentence from the *Scott* quote above could cause confusion as to what must be proven to establish the elements of an aggravated assault charge under SDCL 22-18-1.1(5). This statement in *Scott* originates from prior cases in which this Court was citing language found in SDCL 22-4-1, the general attempt statute that provides the punishment for one who attempts to commit a crime. *See, e.g.*, *Schmiedt*, 525 N.W.2d at 255. But aggravated assault by physical menace, as defined in SDCL 22-18-1.1(5), is not the same as an *attempt to commit some other crime* (e.g., a physical assault) that was prevented or intercepted. Instead, the crime of aggravated assault under SDCL 22-18-1.1(5) is *completed* when a person attempts to put another in fear of imminent serious bodily harm, and does so by means of a physical menace with a deadly weapon.

[¶48.] It is apparent that our prior cases addressing charges of assault by physical menace quoted the language in SDCL 22-4-1 to reinforce the point that the State need not prove that a defendant *succeeded* in the attempt to put another in

fear. However, to establish aggravated assault by physical menace, the State is not required to prove that a defendant "fail[ed]" or [was] prevented or intercepted in the perpetration" of some other crime; the inclusion of such language in a jury instruction could incorrectly suggest that these are elements which must be proven. Nevertheless, the inclusion of such language here was not prejudicial to Rouse. If anything, it incorrectly suggested that the State must prove an additional element, i.e., that Rouse attempted to put the officers in fear but failed or was prevented or intercepted from doing so.

*Instruction 21*

[¶49.]     Rouse also challenges the court's decision to give Instruction 21, a pattern instruction regarding admissions and confessions. The transcript suggests that the parties and the court had an off-the-record discussion regarding whether this pattern instruction should be modified to remove the word confession, but the final instructions settled on the record did not include such a modification to Instruction 21. Rouse's counsel objected to this instruction on the basis that it would be confusing to the jury. The State argued it was appropriate in light of the apology that Rouse made to CO Petrak about an hour after the incident on January 13.

[¶50.]     On appeal, Rouse argues the instruction should not have been given, as the jury may have been led to assume that Rouse's comment to CO Petrak rose to the level of a confession and thus was enough to convict.

[¶51.]     Instruction 21 stated, in part,

> An admission is a statement by a defendant admitting one or
> more of the facts at issue. It is not sufficient by itself to prove

-23-

guilt of the crime charged, but it may prove one or more of the elements of the crime charged.

A confession is a statement by a defendant which admits every element of the crime charged, thus admitting guilt of the crime charged.

[¶52.]     This jury instruction also advised the jurors that they were "the exclusive judges as to whether a confession was made by the defendant and if the statement is true[,]" and that it was for the jury "to determine what weight, if any, to give to a purported admission or confession."  The instruction further advised the jury that "[t]he guilt of a defendant may not be established only by any admission or confession[.]"  Based on the instruction, it was for the jury to determine whether any such confession (or admission) occurred in this case, and if so, what weight to assign it.  We conclude that, while it would not have been an abuse of discretion to delete the pattern instruction's reference to a confession under the circumstances here, because Instruction 21 makes it clear that it is up to the jury to decide whether or not a statement is in fact a confession, the circuit court did not err nor abuse its discretion in giving this instruction as written.

[¶53.]     We affirm in part, reverse in part, and remand for a new trial on the aggravated assault counts.

[¶54.]     JENSEN, Chief Justice, and KERN, SALTER, and MYREN, Justices, concur.