2002 SD 70

**In the Interest of S.J.N–K., A Minor.**

**No. 21921.**

Supreme Court of South Dakota.

Argued March 27, 2002.

Decided June 12, 2002.

Mark Barnett, Attorney General, Frank E. Geaghan, Assistant Attorney General, Pierre, for State.

Marcia R. Brevik, Brevik Law Office, Yankton, for appellant, child.

GILBERTSON, Chief Justice.

[¶ 1.] S.J.N–K. was found guilty of disorderly conduct when he pursued, in a vehicle driven by his brother, his former middle school principal, Wayne Kindle (Kindle), at a public business and repeatedly mouthed the words "fuck you," with the accompanying middle finger gesture, in the presence of Kindle's family. As a result of this conviction, the court adjudicated S.J.N–K. a delinquent child. S.J.N–K. appeals both the disorderly conduct conviction and the delinquency adjudication. We affirm.

### FACTS AND PROCEDURE

[¶ 2.] On the afternoon of August 27, 2000, Kindle, the principal of Yankton Middle School, had stopped at the Save–U– More store to pick up a paper after having taken his family to Sunday dinner. He and his youngest son went in to get the paper while the rest of his family waited outside in the van. On his way in, Kindle and his son met S.J.N–K., his little brother and another boy. Kindle said "hi" and went into the store.

[¶ 3.] When Kindle and his son returned to the van, the boys were still in the parking lot. Kindle's son said that one of the boys was saying bad things and "flipping us off." Kindle turned to see S.J.N–K. mouthing the words "fuck you" and extending his middle finger.[1] Kindle told his children "just shut the van door and we're going to go." But as Kindle pulled out of the parking lot, one of his children told Kindle to look behind because the boys "were pretty close." The car S.J.N–K. was riding in tailgated Kindle until he stopped before entering 23rd Street.

[¶ 4.] Once Kindle stopped, the boys cut diagonally across the adjacent parking lot of a car wash and cut in front of Kindle as he pulled out on to the street. Kindle's wife said "you better look out because they are coming across the parking lot." Kindle "hit the brakes" to avoid a collision and S.J.N–K. "continue[d] to flip [their] vehicle off." Kindle testified "My mother-in-law was in the front seat with me and so I slowed down because I didn't think the kids needed to see that or anybody else in the family...." Instead of continuing on ahead, the car S.J.N–K. was riding in also slowed down. S.J.N–K. continued sticking his hand out of the car window with his middle finger raised. Eventually, S.J.N–K. also stuck his head out of the window and mouthed the words "fuck you" again.[2]

---

1. While Kindle's children told him that they had heard "some pretty bad words," Kindle only saw S.J.N–K. mouthing the words "F–U" or "F-something."

2. Kindle said that he had seen S.J.N–K. mouth "the 'F' word" four times.

When asked if he was "alarmed" by S.J.N–K.'s behavior, Kindle replied "Yeah, I was surprised by that. I didn't expect anything like that. If someone is mad at me about something, that's fine, but I certainly do not appreciate my kids being involved in that or my family." Kindle also testified that he feared for the safety of his passengers.

[¶ 5.] On March 8, 2001, S.J.N–K. was found guilty of disorderly conduct pursuant to SDCL 22–13–1(1). The court also entered an order adjudicating S.J.N–K. a delinquent child as defined in SDCL chapters 26–7 and 26–8C. S.J.N–K. was placed on unsupervised probation for six months and was ordered to perform twenty hours of community service. S.J.N–K. now appeals the juvenile court's rulings, raising the following issues:

1. Whether S.J.N–K.'s profanity, coupled with his offensive gestures and subsequent actions, is constitutionally protected speech.

2. Whether the evidence is sufficient to sustain S.J.N–K.'s conviction for disorderly conduct under SDCL 22–13–1.

3. Whether the trial court's adjudication of S.J.N–K. as a delinquent child amounted to an unconstitutional application of SDCL 22–13–1.

## STANDARD OF REVIEW

[¶ 6.] Constitutional questions, such as those involving First Amendment rights, are reviewed by this Court *de novo*. *City of Pierre v. Blackwell*, 2001 SD 127, ¶ 7, 635 N.W.2d 581, 584 (citing *Steinkruger v. Miller*, 2000 SD 83, ¶ 8, 612 N.W.2d 591, 595).

[¶ 7.] We review the juvenile court's findings of fact under the clearly erroneous standard. *State v. Milk*, 519 N.W.2d 313, 320–21 (S.D.1994) (citing SDCL ch 26–7A). "Clear error is shown

only when, after a review of all the evidence, 'we are left with a definite and firm conviction that a mistake has been made.'" *New Era Mining Co. v. Dakota Placers, Inc.*, 1999 SD 153, ¶ 7, 603 N.W.2d 202, 204 (quoting *Rabenberg v. Rigney*, 1999 SD 71, ¶ 4, 597 N.W.2d 424, 425) (additional citations omitted). "The trial court's findings of fact are presumed correct and we defer to those findings unless the evidence clearly preponderates against them." *Lewis v. Moorhead*, 522 N.W.2d 1, 3 (S.D.1994) (citations omitted). Conclusions of law, however, are reviewed *de novo*. *Sherburn v. Patterson Farms, Inc.*, 1999 SD 47, ¶ 4, 593 N.W.2d 414, 416 (citations omitted).

[¶ 8.] In reviewing the sufficiency of the evidence, we determine "whether there is evidence in the record which, if believed by the fact finder, is sufficient to sustain a finding of guilt beyond a reasonable doubt." *State v. Buchholz*, 1999 SD 110, ¶ 33, 598 N.W.2d 899, 905 (quoting *State v. Knecht*, 1997 SD 53, ¶ 22, 563 N.W.2d 413, 421). We will not reweigh or resolve conflicts in the evidence, nor will we pass on the credibility of witnesses. *Id.* Therefore, "we must accept that evidence, and the most favorable inferences to be fairly drawn therefrom, which will support the verdict." *Id.*

## ANALYSIS AND DECISION

[¶ 9.] **1. Whether S.J.N–K.'s profanity, coupled with his offensive gestures and subsequent actions, is constitutionally protected speech or punishable as disorderly conduct under SDCL 22–13–1.**

[¶ 10.] S.J.N–K. was convicted of disorderly conduct under SDCL 22–13–1(1), which provides that "[a]ny person who intentionally causes serious public inconvenience, annoyance, or alarm to any other person, or creates a risk thereof by:

(1)[e]ngaging in fighting or in violent or threatening behavior; ... is guilty of disorderly conduct." The statute must be narrowly construed so as to cover only language or conduct that is not constitutionally protected. *See Gooding v. Wilson,* 405 U.S. 518, 522, 92 S.Ct. 1103, 1106, 31 L.Ed.2d 408, 414 (1972). Therefore, we must first address whether S.J.N–K.'s profanity, coupled with his offensive gestures and conduct, is protected speech under the First Amendment.

[¶ 11.] The First Amendment prohibits laws "abridging the freedom of speech." US Const. amend. I. But the right to free speech is not absolute or unqualified. *See State v. Springer–Ertl,* 2000 SD 56, ¶ 17, 610 N.W.2d 768, 773.

> There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which has never been thought to raise any Constitutional problem. These include the lewd and obscene, the profane, the libelous, and the insulting or 'fighting' words—those which by their very utterance inflict injury or tend to incite an immediate breach of the peace. It has been well observed that such utterances are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality. "Resort to epithets or personal abuse is not in any proper sense communication of information or opinion safeguarded by the Constitution, and its punishment as a criminal act would raise no question under that instrument."

*Chaplinsky v. New Hampshire,* 315 U.S. 568, 571–72, 62 S.Ct. 766, 769, 86 L.Ed. 1031, 1035 (1942) (quoting *Cantwell v. Connecticut,* 310 U.S. 296, 309–10, 60 S.Ct. 900, 906, 84 L.Ed. 1213, 1221 (1940)) (additional citations omitted). Thus, those expressions that may be termed "fighting words" are not afforded constitutional protection.

[¶ 12.] "Fighting words," as defined in *Chaplinsky* are those words that "inflict injury" or "incite an immediate breach of peace." *Id.* They have also been defined as "... those personally abusive epithets which, when addressed to the ordinary citizen, are, as a matter of common knowledge, inherently likely to provoke a violent reaction." *Cohen v. California,* 403 U.S. 15, 20, 91 S.Ct. 1780, 1785, 29 L.Ed.2d 284, 291 (1971). The speech may be termed "fighting words," and therefore unprotected, if it would cause the average person to react violently. *See, e.g., State v. Hammersley,* 134 Idaho 816, 10 P.3d 1285 (2000) (holding defendant's statement to her 13–year–old daughter's minor friend, to "shut your fucking mouth, you bitch" fell within "fighting words" exception to free speech); *State v. Groves,* 219 Neb. 382, 363 N.W.2d 507 (1985) (holding words "fuckhead" and "mother fucker" are fighting words, not constitutionally protected speech); *State v. Wood,* 112 Ohio App.3d 621, 679 N.E.2d 735 (1996) (holding that to tell someone "fuck you" either verbally or via gesture, may be considered fighting words, under certain circumstances); *C.J.R. v. State,* 429 So.2d 753 (Fla.Dist.Ct.App.1983) (holding unprovoked use of words "fuck this shit" and "mother fucker" constituted fighting words). Whether the target of such provocation does not, in fact, retaliate is not determinative. *See State v. Authelet,* 120 R.I. 42, 385 A.2d 642 (R.I. 1978) (holding as long as language is inherently *likely* to cause *average* person to react violently, it is not necessary that the person who is insulted actually react); *Matter of Welfare of M.A.H.,* 572 N.W.2d 752 (Minn.Ct.App.1997) (holding fact that target did not retaliate is relevant but not

determinative); *Shuler v. State*, 195 Ga. App. 849, 395 S.E.2d 26 (1990) (holding fact that actual violence did not ensue is not determinative).

■ [¶ 13.] The context or circumstances in which the language is used must also be considered. *See F.C.C. v. Pacifica Found.*, 438 U.S. 726, 745, 98 S.Ct. 3026, 3038, 57 L.Ed.2d 1073, 1090 (1978) (citing *Schenck v. United States*, 249 U.S. 47, 52, 39 S.Ct. 247, 248, 63 L.Ed. 470, 473 (1919)). There may be instances where the profanity used by S.J.N–K. is considered protected speech. *See, e.g., State v. John W.*, 418 A.2d 1097 (Me.1980) (holding epithets directed at police officer, as a protest to arrest after officer refused to tell juveniles why they had been pulled over, were not fighting words); *Ware v. City and County of Denver*, 182 Colo. 177, 511 P.2d 475 (1973) (holding defendant's comment "fuck you" during political speech at university was protected speech). *In re Louise C.*, 197 Ariz. 84, 3 P.3d 1004 (1999) (holding juvenile's use of "F" word in argument with principal and another student over whether student had stolen her money did not constitute fighting words). The trial court noted in its opinion that different facts may have resulted in a different outcome.

> If the juvenile in this case had said fuck you to Mr. Kindle once, if he had used the middle finger gesture once, if it was in the context of a statement or an argument or a political rally or in some other manner where language was being used to communicate an idea, [or] an expression.

However, that is not what happened here and we do not address theoretical factual alternatives.

■ [¶ 14.] This was not merely the use of one profane word or one obscene gesture, it was an ongoing aggression that falls outside free speech protection. *See State v. James M.*, 111 N.M. 473, 806 P.2d 1063 (Ct.App.1990) (holding defendant's repeated yelling of the phrase "fuck you," while flailing arms and pointing at another individual on a public sidewalk, constituted unprotected speech and was punishable as disorderly conduct). S.J.N–K.'s act of retaliation against Kindle for not letting him skip the eighth grade and advance to high school is not political speech. It was an unprovoked form of harassment, done but for no apparent purpose than to incite a violent reaction in Kindle. S.J.N–K. is not relieved of guilt simply because his attempts to provoke Kindle were unsuccessful.

[¶ 15.] **2. Whether the evidence is sufficient to sustain S.J.N–K.'s conviction for disorderly conduct under SDCL 22–13–1.**

■ [¶ 16.] Because we find S.J.N–K.'s profanity and conduct are not protected speech, the next step is to determine whether the evidence in this case is sufficient to sustain a conviction for disorderly conduct. S.J.N–K. chose to make his vulgarisms part of a course of conduct, pursuing Kindle and persisting even when the target of his provocation attempted to disengage.[3] S.J.N–K.'s actions amounted to fighting and threatening behavior which, at a minimum, created a risk of

---

**3.** S.J.N–K. attempts to distinguish between his own actions and those of the driver in this case. He points out that the statutory provisions relating to aiding and abetting a misdemeanor have been repealed. *See* 1996 SDSessL ch 158 §§ 3–5. We find this argument unpersuasive. We acknowledge that S.J.N–K. was not driving the car, but this does not eliminate the threatening nature of his own behavior while riding in the car. S.J.N–K.'s instigation of events and his continued use of vulgarisms when the driver pursued Kindle is sufficient to sustain the conviction.

"serious public inconvenience, annoyance, or alarm" to both Kindle and his family. It is true that the mere use of profanity is not sufficient to convict S.J.N–K. for disorderly conduct. But we do not view S.J.N–K.'s use of profanity in a vacuum. The use of this language *in light of the circumstances* is sufficient to uphold his conviction. As the trial court correctly stated:

> In our country we are able to say and use language that is offensive to others. We can use gestures that are offensive to others, but we must look at the context of that language or expression.... Simply to say that a person can use offensive language and offensive gestures on a continuing basis in a situation such as is before this court would be beyond the pale of what is required under the law.

Accepting, as we must, the evidence and inferences in favor of the verdict, we do not see that the trial court's decision in this case is clearly erroneous.

[¶ 17.] **3. Whether the trial court's adjudication of S.J.N–K. as a delinquent child amounted to an unconstitutional application of SDCL 22–13–1.**

[¶ 18.] Given our holding that S.J.N–K.'s language and conduct were not protected speech, as well as the extensive evidence supporting a conviction for disorderly conduct under SDCL 22–13–1(1), we find this argument without merit. Accordingly, we affirm the decision of the trial court adjudicating S.J.N–K. a delinquent child.

[¶ 19.] SABERS, Justice, concurs.

[¶ 20.] KONENKAMP, Justice, concurs in result.

[¶ 21.] AMUNDSON, Justice, and GORS, Acting Justice, dissent.

[¶ 22.] ZINTER, Justice, not having been a member of the Court at the time this action was submitted to the Court, did not participate.

KONENKAMP, Justice (concurring in result).

[¶ 23.] In this case, the juvenile was charged with a violation of SDCL 22–13–1(1) in that he "did cause serious public inconvenience, or alarm to another person, or created a risk thereof, by engaging in fighting or violent or threatening behavior." The trial court held that repeatedly mouthing the words "f—k you" and gesturing with his middle finger constituted disorderly conduct. If it had been just once, the court reasoned, perhaps it would have been protected under the First Amendment.

[¶ 24.] When expression is not threatening, does not constitute "fighting words," and is not likely by its very utterance to inflict injury or provoke the average person to immediate retaliatory violence, disorderly conduct has not been shown. *See Chaplinsky v. New Hampshire*, 315 U.S. 568, 572, 62 S.Ct. 766, 769, 86 L.Ed. 1031, 1035 (1942). It is most doubtful that an "average person," much less a school principal, would have responded violently to this eighth grader's behavior, though it was vulgar and disrespectful. We need not decide today, however, whether the ongoing use of these words and gestures is excluded from the protection of the First Amendment. Here we have words and gestures mixed with conduct.

[¶ 25.] The record undisputedly shows that the truck driven by the juvenile's brother cut across the parking lot and drove in front the principal's car, forcing him to "hit his brakes" to avoid a collision. When this happened, the principal's front seat passenger lurched forward and grabbed the dashboard with her hand.

The obvious purpose of the brother's maneuver was to allow the juvenile to persist in his harassment of the principal and his family. Why else would the truck slow down each time the principal slowed down while the juvenile continued his vulgar words and gestures? The question this appeal presents is whether the evidence in the record, with the most favorable inferences to be drawn therefrom, is sufficient to sustain a finding of guilt beyond a reasonable doubt. *State v. Gonzalez*, 2001 SD 47, ¶ 7, 624 N.W.2d 836, 838.

[¶ 26.] This is a case of mixed conduct and speech, which under the circumstances constituted "threatening behavior." SDCL 22–13–1(1). Such behavior is not protected by the First Amendment. "The examples are many of the application by this Court of the principle that certain forms of conduct mixed with speech may be regulated or prohibited." *Cox v. Louisiana*, 379 U.S. 559, 563, 85 S.Ct. 476, 480, 13 L.Ed.2d 487, 491 (1965). Accordingly, I would affirm the adjudication of delinquency, but for reasons different from those given by the majority.

GORS, Acting Justice (dissenting).

[¶ 27.] I respectfully dissent.

[¶ 28.] Many forms of conduct and language, although distasteful to certain individuals or even a majority of people, are nevertheless afforded constitutional protection. The First Amendment of the United States Constitution protects most forms of expression—even profane, course, vulgar and obnoxious speech is afforded some level of protection. This was made clear in *Cohen*, when the Supreme Court reversed the conviction of a defendant who was arrested and convicted for wearing a coat emblazoned with the words, "fuck the draft":

Surely the State has no right to cleanse public debate to the point where it is grammatically palatable to the most squeamish among us. Yet no readily ascertainable general principle exists for stopping short of that result were we to affirm the judgment below. For, while the particular four-letter word being litigated here is perhaps more distasteful than most others of its genre, it is nevertheless often true that one man's vulgarity is another's lyric. Indeed, we think it is largely because governmental officials cannot make principled distinctions in this area that the Constitution leaves matters of taste and style so largely to the individual.

403 U.S. at 25, 91 S.Ct. at 1788, 29 L.Ed.2d at 294. Just because the government finds protected speech offensive does not mean it has the right to suppress it. *F.C.C.*, 438 U.S. at 745, 98 S.Ct. at 3038, 57 L.Ed.2d at 1091.

[¶ 29.] As the majority correctly recognizes, however, freedom of expression has its limits. In *Chaplinsky* the United States Supreme Court held that "fighting words" are outside the protection of the First Amendment. 315 U.S. at 572, 62 S.Ct. at 769, 86 L.Ed. at 1035. The Supreme Court defined "fighting words" as words "which by their very utterance inflict injury or tend to incite an immediate breach of peace." *Id.* at 571, 62 S.Ct. at 769, 86 L.Ed. at 1035.

[¶ 30.] Under South Dakota law, a person is guilty of disorderly conduct if that person "intentionally causes serious public inconvenience, annoyance, or alarm to any other person, or creates a risk thereof by: (1)[e]ngaging in *fighting* or in *violent* or *threatening* behavior." SDCL 22–13–1(1) (emphasis added). This statute has been drawn to include, as a violation, those epithets amounting to "fighting words." Therefore, in order to constitute disorderly conduct, language or gestures that are merely distasteful cannot be punished.

[¶ 31.] In deciding whether S.J.N–K.'s actions constitute disorderly conduct, the

surrounding circumstances must be taken into consideration. We must look to the particular situation and the person who was insulted. *See Lewis v. City of New Orleans,* 415 U.S. 130, 135, 94 S.Ct. 970, 973, 39 L.Ed.2d 214, 220 (1974) (stating, "words may or may not be 'fighting words,' depending upon the circumstances of their utterance"). The nature of Mr. Kindle's experience, training and responsibilities must be considered in determining whether S.J.N–K.'s conduct constituted a violation of SDCL 22–13–1(1).

[¶ 32.] S.J.N–K.'s conduct was obnoxious and rude. However, S.J.N–K.'s conduct was not likely to provoke an ordinary citizen to a violent reaction, and was even less likely to provoke a violent response from the school principal, Mr. Kindle, the alleged victim in this case. Indeed, the conduct did not. Mr. Kindle testified:

Q: Did these things elicit in you a desire to fight with [S.J.N-K.]?

A: No.

Q: Did these things elicit from you a desire to act violently in any way?

A: No.

Q: Did [S.J.N-K.] entice you to fight by getting out of the vehicle or invite you out of your vehicle?

A: No.

Further, Mr. Kindle chose to continue to follow the vehicle for nearly a mile, even though he had ample opportunities to turn around. Mr. Kindle was asked,

Q: If one of your students in school ... is feeling threatened by another person and reports that to you as the administrator, would it be your advice to that student to follow that other person?

A: No.

S.J.N–K. is not here because he tried to start a fight. S.J.N–K. is here simply because he mouthed "fuck you" and flipped-off the principal. Substitute S.J.N–K.'s language and gesture with the idea being expressed—"I hate you." If S.J.N–K. had waved with all of his fingers and mouthed, "I hate you," we would not be here today.

[¶ 33.] In *People of City of Oak Park v. Smith,* 79 Mich.App. 757, 262 N.W.2d 900 (1977), the defendant, while involved in a minor traffic altercation, gave a plainclothes police officer the finger,[4] and the defendant's lips "were observed to move in what [the officer] believed to be an obscene utterance." *Id.* at 901. The court found that these were not "fighting words." *Id.* at 903. Although "immature" and hurtful to the officer's pride, they did not lead to a breach of the peace. *Id.* The gesture was not intended to provoke a fight or a breach of the peace. The motorist was merely registering displeasure. In fact, the court noted that such expressions were common in congested traffic. *Id.*

[¶ 34.] While S.J.N–K.'s speech and conduct were also immature and likely hurt Mr. Kindle's pride, they did not inflict injury or tend to incite an immediate breach of the peace, and they therefore do not constitute "fighting words."

[¶ 35.] As the court in *City of Oak Park* stated, "[g]iven the right circumstances, the law may retaliate, not with its finger but with its long arm." *Id.* The right circumstances do not exist in this case.

[¶ 36.] I dissent.

[¶ 37.] AMUNDSON, Justice, joins this dissent.

---

4. "The extended middle finger [as an] insult is of ancient origin. Diogenes is reported to have insulted Demosthenes with it." *City of* *Oak Park,* 262 N.W.2d at 902 n1 (citing Betty J. Bauml and Franz H. Bauml, A Dictionary of Gestures, 71 (1975)).