#31080-aff in pt & rev in pt-SPM
**2026 S.D. 11**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

THE PEOPLE OF THE STATE OF SOUTH DAKOTA
IN THE INTEREST OF
J.A.D., III, Minor Child and Appellant, and concerning
J.A.D., Jr., and A.D., Sr., Respondents.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
FALL RIVER COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE SCOTT ROETZEL
Judge

\* \* \* \*

KYLE BEAUCHAMP of
Colbath and Sperlich
Rapid City, South Dakota                    Attorneys for appellant J.A.D.,
                                            III


MARTY J. JACKLEY
Attorney General

ANGELA R. SHUTE
Assistant Attorney General
Pierre, South Dakota                        Attorneys for appellee State of
                                            South Dakota.

\* \* \* \*

ARGUED
JANUARY 13, 2026
OPINION FILED **02/25/26**

#31080

MYREN, Justice

[¶1.] The State filed a petition charging J.A.D. as a juvenile delinquent after he threatened to shoot a school counselor, other students, and himself. After adjudicating him delinquent, the circuit court committed him to the Department of Corrections (the DOC). J.A.D. appeals. We reverse in part and affirm in part.

## Factual and Procedural Background

[¶2.] In December 2024, J.A.D. went to the main office at the Edgemont school and called his grandfather, asking to be picked up from school. J.A.D. explained that his friends were picking on him and that he did not like it at the school. Connie Gorsuch, a special education teacher and co-director of the Edgemont School District, was in the office when J.A.D. made the phone call to his grandfather. Gorsuch worked with J.A.D. on prior occasions and requested to speak to him privately after he concluded speaking with his grandfather.

[¶3.] Gorsuch testified that she and J.A.D. spoke about the importance of having good attendance at school, and that J.A.D. needed to be at school if he wanted to achieve his goals. She explained that "at one point [J.A.D.] got very, very quiet and flat" and said, "I don't want to be here." Gorsuch explained that she was there to help J.A.D. Gorsuch testified that in response, J.A.D. told her:

> And he just said, you know: "I have - - I can get the guns any time I want. Everybody thinks I can't get to them, but I can." And he was - - he kept going, and he just kept saying: "I - - I don't want to be here." And then he said: "And I'll just shoot you, I'll shoot everybody in the school, and then I'll just kill myself." And I said: "[J.A.D.] what did you say?" And he said: "I'm going to shoot you and everybody in the school, and I'm going to kill myself."

[¶4.] J.A.D. left the main office after making these statements and started walking towards an exit. Gorsuch and another school employee followed J.A.D. while he was still in the school, and they repeatedly asked J.A.D. to stop. Gorsuch explained that "[a]s he left the school, he turned around and said: 'I'll show you,' and he left." After J.A.D. left the school grounds, Gorsuch called 911 and reported what had occurred. Gorsuch felt compelled to initiate the school's "soft lockdown" procedure.

[¶5.] Gorsuch explained that J.A.D.'s behavior on this day was different from what he had displayed before. She testified that "[a] lot of times when [J.A.D.] was upset, he might be teary, he might yell or at least, you know, very obviously frustrated, you know. This time it was - - he was very quiet. He didn't have a lot of emotion, which was very different[.]" Gorsuch also testified that J.A.D. had frequently wanted his grandfather to pick him up from school and had tried to manipulate school staff so he could leave school.

[¶6.] Gorsuch testified that the Edgemont School District is prepared for "hard" and "soft" lockdowns. The type of lockdown Gorsuch initiated in this case was a soft lockdown because the threat was outside the building. During a soft lockdown, teachers are instructed to close and lock their classroom doors, and students are not allowed to leave the room. However, teachers are allowed to continue teaching. School staff notified the other school buildings of the threat and of the soft lockdown. Law enforcement went to J.A.D.'s grandfather's home and found J.A.D. in a distressed state. After J.A.D. described to law enforcement what

happened at school, the officers placed him under arrest. He was held in custody throughout these proceedings.

[¶7.]     The State filed a petition charging J.A.D. as a delinquent child with three offenses: (1) aggravated assault; (2) simple assault; and (3) making a terrorist threat. The aggravated assault and simple assault counts were charged in the alternative. J.A.D. entered denials to all three charges.

[¶8.]     Gorsuch was the only witness who testified at the adjudicatory hearing, and the circuit court found her credible. The circuit court determined the State did not satisfy the elements of the aggravated assault charge because "the [c]ourt does not feel the State has met their burden on those elements as far as the deadly weapon and the imminent serious bodily harm. He made a statement about a weapon which caused her concern, the immediacy and the weapon are not together."

[¶9.]     However, the circuit court determined the State satisfied its burden on the other two counts. Regarding simple assault, the circuit court explained:

> However, as it relates to the alternative count[,] the [c]ourt does find that the State has met its burden. Simple assault is a little bit different. They put someone in fear by physical menace, and that fear is imminent bodily harm, but then it has a caveat, with or without the actual ability to harm the other person.
>
> The [c]ourt finds that his statements meaning - - or statements about getting a gun and shooting her and that he will show her, shows that there was fear placed in her, and that he was attempting by physical menace to put her in fear. That does not require the actual ability to do so. So, the [c]ourt does not find that a weapon was needed on his person or to be brandished at that time. However, the [c]ourt will note that Ms. Gorsuch did say she was aware he had weapons and had access to weapons.

Regarding the terrorist threat charge, the circuit court determined:

He did make a couple different statements about shooting Ms. Gorsuch and shooting everyone at the school and himself. The [c]ourt does not necessarily find that his intent was to get out of school. There was testimony that he had gotten out of school in the past and was aware of how to do that, whether it's a stomach ache or some other issue, but the fact that he chose in this situation to state that he was going to shoot her and shoot everyone in the school, the [c]ourt finds that that shows a little bit different approach. It wasn't just his intent to get out of school.

The [c]ourt does find that the school is a public service entity, and it would meet the elements. And as the witness testified, she felt there was a credible threat. They went into a soft lockdown. And given her knowledge of him, his behavior, and his access to guns, it made a credible threat.

Following the adjudicatory hearing, the circuit court did not enter written findings and conclusions or a written adjudicatory order.[1]

[¶10.]    A court services officer prepared a social case study documenting that J.A.D. had previously attended two treatment centers and had not successfully completed either program. The social case study also noted that he had been allowed to do online home schooling, which "led to [J.A.D.] being placed on

---

1.    SDCL 26-7A-87 provides that in delinquency proceedings, circuit courts "shall issue findings of fact, conclusions of law and an order of adjudication stating the child to be . . . a delinquent child[.]" In his appellate brief, J.A.D. argues "the circuit court erred in failing to provide an adjudicatory order as required pursuant to SDCL 26-7A-87." However, beyond identifying this issue, he does not develop this argument or contend that it hampers this Court's appellate review, and he goes on to discuss the merits of the claims he has raised. Our review of the record demonstrates that the circuit court's oral findings are sufficient to allow a meaningful appellate review. *See AgFirst Farmers Co-op. v. Diamond C Dairy, LLC*, 2013 S.D. 19, ¶¶ 15–18, 827 N.W.2d 843, 847–48 (explaining that when entered with sufficient specificity, oral findings in conjunction with the record can permit meaningful appellate review).

probation on 09/25/2023, due to [him] making threat[en]ing comments to the online teacher."

[¶11.] At the dispositional hearing, the State argued J.A.D. should be committed to the DOC because it viewed that disposition as "the only viable option." The State emphasized that J.A.D.'s mental health issues were "a danger potentially to himself and/or others." J.A.D. argued for a "probationary sentence so that [he could] have an opportunity to work with court services, and if there's any sort of treatment, programming or anything like that, that the [c]ourt or court services would require as a part of that[.]" The circuit court committed J.A.D. to the DOC and reasoned:

> You know, this is a serious situation. There has been some ongoing problems with yourself at school. This type of behavior is something that the school can't take lightly, nor can the community take lightly. I know there's been some disagreement as far as what your intent was, but the [c]ourt recalls the testimony of the parties and recalls the testimony of the teacher. And given this social case study, given the assessments that were provided, the [c]ourt is in agreement with the . . . recommendation as to the commitment to the Department of Corrections. We do understand the position that your counsel has pointed out, but the [c]ourt does feel that the elements have been met, and the best placement at this point is to the Department of Corrections.
>
> .  .  .
>
> But the [c]ourt has reviewed, as I said, the social case study. We're familiar with the facts. We find that due to the nature of the offense, this is a crime of violence, that [J.A.D.] has had two unsuccessful treatments in the past. The [c]ourt finds that he's a danger to the public and/or himself. And given the facts of this and the case study, the [c]ourt finds that there's no other viable option; that the least restrictive alternative is placement with the Department of Corrections.

[¶12.] J.A.D. appeals, raising three issues: (1) whether the circuit court erred when it adjudicated J.A.D. of simple assault; (2) whether the circuit court erred

when it adjudicated J.A.D. of making a terrorist threat; and (3) whether the circuit court abused its discretion when it committed J.A.D. to the DOC.

### Decision

#### 1. Whether the circuit court erred when it adjudicated J.A.D. of simple assault.

[¶13.] J.A.D. argues there was insufficient evidence presented at the adjudicatory hearing to support the circuit court's determination that J.A.D. committed simple assault. He argues the evidence did not reveal that he engaged in an "overt act" because "[a]t no point would any action by [J.A.D.] have placed [Gorsuch] in requisite fear to sustain a conviction of simple assault." He also argues "[n]othing within the record supports a finding of imminence that is an essential element of simple assault."

[¶14.] "This Court reviews the sufficiency of the evidence to support an adjudication of delinquency according to the same standards used in reviewing the sufficiency of the evidence to support a criminal conviction." *People ex rel. I.T.B.*, 2021 S.D. 39, ¶ 10, 962 N.W.2d 436, 440–41 (quoting *People ex rel. B.J.T.*, 2005 S.D. 123, ¶ 7, 707 N.W.2d 489, 492). "Therefore, our review of 'the disposition of a delinquency finding requires us to ensure that "the State proved each element of the offense beyond a reasonable doubt."'" *Id.* at 441 (quoting *People ex rel. C.C.H.*, 2002 S.D. 113, ¶ 8, 651 N.W.2d 702, 705). "In reviewing the sufficiency of the evidence, we determine 'whether there is evidence in the record which, if believed by the fact finder, is sufficient to sustain a finding of guilt beyond a reasonable doubt.'" *Id.* (quoting *People ex rel. S.J.N-K.*, 2002 S.D. 70, ¶ 8, 647 N.W.2d 707, 710). "In our review, we give due deference to the ability of the trial court, as the ultimate fact-

finder, to weigh the evidence and determine the credibility of witnesses[,]" and will not disturb its credibility determinations or factual findings unless they are clearly erroneous. *People ex rel. B.J.T.*, 2005 S.D. 123, ¶ 7, 707 N.W.2d at 492 (citation omitted).

[¶15.] The State's delinquency petition charged J.A.D. as a delinquent under SDCL 22-18-1(4). That statute provides that simple assault occurs when a person "[a]ttempts by physical menace or credible threat to put another in fear of imminent bodily harm, with or without the actual ability to harm the other person[.]" *Id.*

[¶16.] "The gravamen of the offense is the attempt to put a person in fear of imminent serious bodily harm." *People ex rel. R.L.G.*, 2005 S.D. 119, ¶ 9, 707 N.W.2d 258, 261 (per curiam) (emphasis omitted) (footnotes omitted) (quoting *State v. LaCroix*, 423 N.W.2d 169, 170 (S.D. 1988)). "Attempt" in the context of this simple assault offense is not the same as the criminal act of *attempting* to commit a different underlying crime, as is prohibited by SDCL 22-4-1. Rather, "the crime of [simple] assault under [SDCL 22-18-1(4)] is *completed* when a person attempts to put another in fear of imminent [ ] bodily harm, and does so by means of physical menace [or credible threat]." *State v. Rouse*, 2025 S.D. 29, ¶ 47, 23 N.W.3d 467, 481.[2] "'Imminent' has been defined as 'near at hand; mediate rather than immediate; close rather than touching; impending; on the point of happening; threatening; menacing; perilous.'" *People ex rel. R.L.G.*, 2005 S.D. 119, ¶ 9 n.3, 707 N.W.2d at 261 n.3 (quoting *State v. Archambeau*, 322 N.W.2d 879, 880 (S.D. 1982)

---

2.   *Rouse* involved an aggravated assault charge under SDCL 22-18-1.1(5), but the same principle applies to the "attempt" language as used in SDCL 22-18-1(4), when interpreting the elements of this simple assault charge.

(per curiam)); *see also Imminent*, Black's Law Dictionary (12th ed. 2024) (defining "imminent" as "threatening to occur immediately; dangerously impending"; "[a]bout to take place").

[¶17.]    The evidence supports the circuit court's finding that J.A.D. attempted, by credible threat, to place Gorsuch in fear.  At the end of his private conversation with Gorsuch, J.A.D. related that he had access to his grandfather's guns.  J.A.D. then told Gorsuch that he wanted to shoot her, the people in the school, and himself.  After making these comments, J.A.D. left the school office and began walking towards a school exit.  Gorsuch and another school employee unsuccessfully tried to stop him from leaving.  As J.A.D. left the school, he ominously told Gorsuch, "I'll show you," and began walking towards his grandfather's home.  Based on J.A.D.'s words and his declared access to guns, a fact finder could have reasonably determined that he attempted to place Gorsuch in fear by credible threat.

[¶18.]    However, J.A.D.'s attempt to place Gorsuch in fear was not in relation to a threat of *imminent* bodily injury.  J.A.D. was at the school when he threatened to shoot Gorsuch and everybody in the school.  His statements related to guns that were at his grandfather's home ("He said everyone thinks that he can't get to the guns *in his house*, but he can" (Emphasis added.)).  Gorsuch was "afraid he was going *to go home* and get guns."  (Emphasis added.)

[¶19.]    Gorsuch's safety concerns were prudent and appropriate.  However, they were related to a threat that required other actions before it was present.  For the threat to become imminent, J.A.D. needed to gain access to the guns.  Curiously, the circuit court assessed the same facts and determined that there was no showing

of imminence to support the aggravated assault allegations. It reasoned: "the [c]ourt does not feel the State has met their burden on those elements as far as the deadly weapon *and the imminent serious bodily harm*. He made a statement about a weapon which caused her concern, *but the immediacy* and the weapon are not together." (Emphasis added.)

[¶20.] Based on the text of SDCL 22-18-1.1(5) and SDCL 22-18-1(4), aggravated assault and simple assault do not require different levels of imminence. Thus, it does not follow that the circuit court would determine the same conduct constituted an imminent threat for one crime, but not the other. The difference between the two crimes is that aggravated assault requires proof of an attempt by physical menace with a *deadly weapon* to put another in fear of imminent serious bodily injury, and simple assault simply requires proof of an attempt to do the same by physical menace or credible threat. The fact that simple assault does not require the perpetrator to have the actual ability to harm the other person does not obviate the requirement that the perpetrator make a threat of *imminent* bodily harm. If the perpetrator threatens bodily harm that is not imminent, they are not liable under SDCL 22-18-1(4), regardless of whether they had the ability to accomplish the threat.

[¶21.] J.A.D.'s comments, while disturbing, were not threats relating to a bodily injury that was "on the point of happening," "near at hand," or "threatening to occur immediately." *People ex rel. R.L.G.*, 2005 S.D. 119, ¶ 9 n.3, 707 N.W.2d at 261 n.3 (citation omitted); *Imminent*, Black's Law Dictionary (12th ed. 2024).

Because there was insufficient evidence regarding an essential element of the crime of simple assault, the circuit court's adjudication on this count is reversed.

### 2. Whether the circuit court erred when it adjudicated J.A.D. of making a terrorist threat.

[¶22.]	J.A.D. argues that the circuit court did not make the necessary findings to determine that he had committed the offense of making a terrorist threat under SDCL 22-8-13(4). Specifically, he argues that the circuit court did not find that he had the specific intent to substantially impair or interrupt a public service. He also argues that a public service was not substantially impaired or interrupted in this case.

[¶23.]	The standard of review applicable to issue two is the same as issue one, described in paragraph 14. The elements of this offense required proof that: (1) J.A.D. threatened "to commit a crime of violence, as defined by subdivision 22-1-2(9), or an act dangerous to human life involving any use of chemical, biological, or radioactive material, or any explosive or destructive device"; (2) "with the intent to . . . [s]ubstantially impair or interrupt public communications, public transportation, common carriers, public utilities, or other public services[.]" SDCL 22-8-13(4). "The crime of making a terrorist threat is a specific intent crime because it requires an 'intent or purpose beyond the intent to do the physical act which the crime requires.'" *People ex rel. I.T.B.*, 2021 S.D. 39, ¶ 14 n.6, 962 N.W.2d at 441 n.6 (quoting *State v. Armstrong*, 2020 S.D. 6, ¶ 30, 939 N.W.2d 9, 16). Under SDCL 22-1-2(9), a "[c]rime of violence" is defined as "murder, manslaughter, rape, aggravated assault, riot, robbery, burglary in the first degree, arson, kidnapping, felony sexual contact as defined in § 22-22-7, felony child abuse as defined in § 26-

10-1, or any other felony in the commission of which the perpetrator used force, or was armed with a dangerous weapon, or used any explosive or destructive device[.]" "[T]he concept of terrorism has a unique meaning and its implications risk being trivialized if the terminology is applied loosely in situations that do not match our collective understanding of what constitutes a terrorist act." *People ex rel. I.T.B.*, 2021 S.D. 39, ¶ 17, 962 N.W.2d at 442 (citation omitted).

[¶24.]     Gorsuch testified that while in the school office, J.A.D. threatened to shoot her and everybody in the school. Thus, J.A.D. threatened to commit murder. Under SDCL 22-1-2(9), murder is classified as a crime of violence. Accordingly, there was sufficient evidence to establish that J.A.D. threatened to commit a crime of violence, as defined by SDCL 22-1-2(9).

[¶25.]     While the circuit court did not explicitly state that it found the necessary specific intent, our review of its adjudicatory decision leaves no doubt that it found the State had established all the necessary elements. At the conclusion of the adjudicatory hearing, J.A.D.'s counsel argued that J.A.D.'s intent was not to disrupt or put the school under lockdown, rather, his intent was to get out of school. The circuit court expressly rejected this argument and found all the elements of this offense were met. As to whether the evidence supported this finding, Gorsuch testified that she was acquainted with J.A.D. and his behaviors. She was aware that J.A.D. frequently sought to leave school and used manipulative tactics to accomplish that goal. However, on the day of the incident, J.A.D.'s behavior differed from prior occasions. Gorsuch explained that "[t]his time it was - - he was very quiet. He didn't have a lot of emotion, which was very different[.]" In

addition, J.A.D. himself explained he intended to "shoot you and everybody in the school, and I'm going to kill myself." After making these menacing statements, J.A.D. left the premises without permission and said, "I'll show you." Based on J.A.D.'s statements and actions, the circuit court's findings are supported by the record, and it did not err when it adjudicated J.A.D. of making a terroristic threat.

### 3. *Whether the circuit court abused its discretion when it committed J.A.D. to the DOC.*

[¶26.] "Juvenile courts are 'theoretically engaged in determining the needs of the child and of society rather than adjudicating criminal conduct.'" *People ex rel. D.S.*, 2021 S.D. 63, ¶ 21, 967 N.W.2d 1, 6 (quoting *Kent v. United States*, 383 U.S. 541, 554 (1966)). To that end, "[t]he purpose of juvenile court proceedings is not to punish but rather to rehabilitate and correct a juvenile's behavior so as to avoid future confrontations with the law." *Id.* ¶ 22, 967 N.W.2d at 7 (quoting *In re S.K.*, 1999 S.D. 7, ¶ 11, 587 N.W.2d 740, 742). In making this assessment, "a court must consider and balance the interest of rehabilitation for the juvenile and the interest of public safety." *Id.*

[¶27.] "If a child has been adjudicated as a delinquent child, the court shall enter a decree of disposition according to the least restrictive alternative available in keeping with the best interests of the child." SDCL 26-8C-7.

> The court may only commit a child to the Department of Corrections if the judge finds that:
>
> (a) No viable alternative exists; and
>
> (b) The Department of Corrections is the least restrictive alternative; and one of the following:

i. The child is currently adjudicated delinquent for an offense eligible for transfer proceedings pursuant to § 26-11-3.1; the child is currently adjudicated delinquent for a crime of violence pursuant to subdivision 22-1-2(9), sex offense pursuant to § 22-24B-1, felony sexual registry offense pursuant to chapter 22-24B, or burglary in the second degree pursuant to § 22-32-3; or the court finds from evidence presented at the dispositional hearing or from the pre-dispositional report that the youth presents a significant risk of physical harm to another person;

ii. The child has been previously adjudicated delinquent for separate delinquent acts, arising out of separate and distinct criminal episodes, three or more times within the preceding twelve-month period; or

iii. The court finds from evidence presented at the dispositional hearing or from the pre-dispositional report that the child is at high risk for re-offense based on a validated risk assessment, and the child has either had a previous unsuccessful discharge from probation for a felony offense or is on supervised probation for a felony offense; and

(a) The child has been adjudicated for intentional damage to property and the property damage exceeds five thousand dollars; or

(b) The child has been adjudicated for a drug distribution offense that is punishable at least as a Class 4 felony.

SDCL 26-8C-7(10). A "viable" alternative is one with "a reasonable chance of succeeding[.]" *People ex rel. D.S.*, 2022 S.D. 11, ¶ 27, 970 N.W.2d 547, 555. "Part of this consideration . . . involves the comparative risk to the community while the rehabilitation of the young person is attempted utilizing local treatment options." *Id.* "The court is not obligated to place a juvenile in an alternative setting with only a remote possibility of success that unduly endangers the community." *Id.* at 556.

[¶28.]        "[T]he findings of fact as to whether there was no viable alternative to a DOC commitment and whether a DOC commitment was the least restrictive alternative are evaluated using the clearly erroneous standard, while the overall dispositional decision to commit [a juvenile] to the DOC under SDCL 26-8C-7(10) is an application of law subject to abuse of discretion review." *Id.* ¶ 21, 970 N.W.2d at 554 (citation omitted). "Clear error is shown only when, after a review of all the evidence, we are left with a definite and firm conviction that a mistake has been made." *Id.* (citation omitted). "An abuse of discretion is 'a fundamental error of judgment, a choice outside the range of permissible choices, a decision, which on full consideration, is arbitrary or unreasonable.'" *Id.* (citation omitted).

[¶29.]        J.A.D. contends the circuit court's findings in its order of commitment are insufficient. He argues "[v]iable options existed for [J.A.D.] and commitment to DOC was not the least restrictive alternative. The crimes for which [J.A.D.] was adjudicated are not those that would regularly justify commitment to DOC."

[¶30.]        In pronouncing its decision to commit J.A.D. to the DOC, the circuit court explained that it was familiar with J.A.D. and had reviewed the social case study. At the dispositional hearing and in its written order of commitment, the circuit court found that commitment to the DOC was the least restrictive alternative and that no viable alternative existed. "[T]he finding that no viable alternative exists and that DOC commitment is the least restrictive alternative are findings of fact[.]" *People ex rel. D.S.*, 2021 S.D. 63, ¶ 20, 967 N.W.2d at 6. In making this finding, the circuit court considered the facts of this case, the fact that J.A.D. had a prior adjudication for making threatening or harassing phone calls (for

which he received probation), and two unsuccessful attempts at inpatient treatment. Based on J.A.D.'s previous failed attempts at less restrictive alternatives, and the potential danger associated with the nature of J.A.D.'s threats, the circuit court did not clearly err when it concluded that other alternatives were not viable and that commitment to the DOC was the least restrictive alternative. Finally, the circuit court found that J.A.D. "presents a significant risk of physical harm to another person." SDCL 26-8C-7(10)(b)(i).[3] The evidence in this record supports this finding.

[¶31.] When making its ultimate dispositional decision, the circuit court made the requisite findings (which are not clearly erroneous), was guided by SDCL 26-8C-7(10), and correctly applied that statute. The circuit court did not abuse its discretion when it committed J.A.D. to the DOC.

[¶32.] We vacate the adjudication of J.A.D. on the simple assault charge, but affirm the adjudication on the terrorist threat charge. We also affirm the circuit court's decision to commit J.A.D. to the DOC.

---

3. J.A.D. challenges whether making a terrorist threat is a crime of violence under SDCL 22-1-2(9). The crime of making a terrorist threat is not explicitly listed in SDCL 22-1-2(9). However, depending on how an individual perpetrates the crime, it could be included in the statutory definition of a crime of violence. For this to be the case, "the perpetrator" must have made the terrorist threat with the "use[ of] force, or w[hile] armed with a dangerous weapon, or [with the] use[ of] any explosive or destructive device[.]" J.A.D.'s conduct would not be subject to this definition because he never exercised force against a victim and did not have a dangerous weapon or explosive or destructive device with him when he made the threat. Still, the circuit court made the necessary findings under SDCL 26-8C-7(10)(b)(i) because it found that J.A.D. presented a significant risk of physical harm to another person.

[¶33.] JENSEN, Chief Justice, and DEVANEY and GUSINSKY, Justices, concur.

[¶34.] SALTER, Justice, concurs in part and dissents in part.

SALTER, Justice (concurring in part and dissenting in part).

[¶35.] I join the Court's opinion as it relates to the terroristic threat issue and the circuit court's dispositional order. But I am afraid I see the simple assault question differently than my colleagues, and I write to respectfully add my views.

[¶36.] J.A.D. committed simple assault, as charged in the petition, if he attempted through a "credible threat to put another in fear of imminent bodily harm." SDCL 22-18-1(4). Surely, the circuit court could find that J.A.D. telling Gorsuch he is going to retrieve firearms located only a few blocks away and return to shoot her and others was an attempt to put her "in fear of imminent bodily harm." Gorsuch's testimony unquestionably described a type of bodily harm that was "near at hand" or "impending" or "menacing," all noted among the multiple formulations of "imminent" set out originally in *State v. Archambeau*, 322 N.W.2d 879, 880 (S.D. 1982) (per curiam).

[¶37.] In my view, the Court focuses its imminent inquiry too much upon carrying out the threatened conduct and not enough on the actual "fear of imminent bodily harm" requirement of SDCL 22-18-1(4). As a result, the Court institutes an intermediate-step rule under which an individual does not commit simple assault under the statute if another step was necessary to execute the threat. But this is not what SDCL 22-18-1(4) says; nor is the intermediate-step rule consistent with yet another of the adjectives we have used to describe imminent—"mediate"—

meaning middle or indirect. *See People ex rel. R.L.G.*, 2005 S.D. 119, ¶ 9 n.3, 707 N.W.2d 258, 261 n.3 (quoting *Archambeau*, 322 N.W.2d at 880). Under the Court's view, a student who credibly threatens another with a firearm located in his school locker could never commit simple assault because an intervening step—going to the locker to get the gun—categorically precludes an attempt to put the other person in fear of imminent bodily harm.

[¶38.] I also think the Court's comparison to the circuit court's analysis of imminent in the context of the aggravated assault charge is not apt. The text of SDCL 22-18-1.1(5) differs from SDCL 22-18-1(4) in more than just the relative severity of the threatened injury—"serious bodily harm" vs. simply "bodily harm." The aggravated assault statute, which does not have a credible threat theory of liability, requires an attempt "*with a deadly weapon* to put another in fear of imminent serious bodily harm." SDCL 22-18-1.1(5) (emphasis added). Whatever else can be said of J.A.D.'s statements to Gorsuch, they were not "with a deadly weapon," as the circuit court recognized. And, in any event, the correctness of the court's finding concerning the aggravated assault charge is not, of course, before us.